WILLIAM BRADSHAW
NAME

D-73217
PRISON IDENTIFICATION/BOOKING NO.

P.O. BOX 689, CTF-CENTRAL, GW-325-Low
ADDRESS OR PLACE OF CONFINEMENT
SOLEDAD, CA 93960-0689

Note:    It is your responsibility to notify the Clerk of Court in writing of any
change of address. If represented by an attorney, provide his name,
address, telephone and facsimile numbers, and e-mail address.

FEE DUE

FILED
CLERK, U.S. DISTRICT COURT
AUG - 7 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

WILLIAM BRADSHAW
FULL NAME (Include name under which you were convicted)
                                                    Petitioner,

v.

B. CURRY, WARDEN (A), et al
NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER
                                                    Respondent.

CASE NUMBER:

CV   SACV07-907 CAS(JC)
To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

**PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION _____
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number)
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.   To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.   In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3.   Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.   Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.   You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

5.   You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

6.   When you have completed the form, send the original and two copies to the following address:
   Clerk of the United States District Court for the Central District of California
   United States Courthouse
   ATTN: Intake/Docket Section
   312 North Spring Street
   Los Angeles, California 90012

LODGED
CLERK, U.S. DISTRICT COURT
JUL 30 2007
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

DOCKETED ON CM
AUG 17 2007
CV-69 (04/05)
024

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1. ☐ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☒ a parole problem.
4. ☐ other.

## PETITION

1. Venue

   a. Place of detention <u>CORRECTIONAL TRAINING FACILITY - SOLEDAD</u>

   b. Place of conviction and sentence <u>ORANGE COUNTY SUPERIOR COURT</u>
      <u>700 CIVIC CENTER DRIVE WEST, SANTA ANA, CA 92702</u>

2. Conviction on which the petition is based *(a separate petition must be filed for each conviction being attacked)*.

   a. Nature of offenses involved *(include all counts)*: <u>2nd Degree Murder ; Use of Firearm</u>

   b. Penal or other code section or sections: <u>Cal. Pen. Code §§ 187, 12022.5</u>

   c. Case number: <u>C-62913</u>

   d. Date of conviction: <u>11/3/87</u>

   e. Date of sentence: <u>12/4/87</u>

   f. Length of sentence on each count: <u>2nd Degree Murder = 15-to-life</u>
      <u>Use of Firearm    3-2years</u>

   g. Plea *(check one)*:

      ☐ Not guilty

      ☒ Guilty

      ☐ Nolo contendere

   h. Kind of trial *(check one)*: <u>N/A</u>

      ☐ Jury

      ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?    ☐ Yes  ☒ No

   If so, give the following information for your appeal *(and attach a copy of the Court of Appeal decision if available)*:

   a. Case number: _____

   b. Grounds raised *(list each)*:

      (1) _____

---

CV-69 (04/05)    PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)    Page 2 of 10

(2) _____

(3) _____

(4) _____

(5) _____

(6) _____

c.  Date of decision: _____

d.  Result _____

_____

4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal
decision?   ☐ Yes    ☐ No   N/A

If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a.  Case number: _____

b.  Grounds raised *(list each)*:

(1) _____

(2) _____

(3) _____

(4) _____

(5) _____

(6) _____

c.  Date of decision: _____

d.  Result _____

_____

5.  If you did not appeal:

a.  State your reasons  PLEA BARGAIN _____

_____

_____

_____

_____

b.  Did you seek permission to file a late appeal?    ☐ Yes   ☒ No

6.  Have you previously filed any habeas petitions in any state court with respect to this <u>judgment of conviction?</u>
☐ Yes   ☒ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

3 of 42

a.  (1) Name of court: __N/A_____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a)  _____

(b)  _____

(c)  _____

(d)  _____

(e)  _____

(f)  _____

(5) Date of decision: _____

(6) Result  _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

b.  (1) Name of court: __N/A_____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a)  _____

(b)  _____

(c)  _____

(d)  _____

(e)  _____

(f)  _____

(5) Date of decision: _____

(6) Result  _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

c.  (1) Name of court: __N/A_____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a)  _____

(b)  _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes    ☐ No

7. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the facts supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

CAUTION:    *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

a. Ground one: CONTRARY TO /UNREASONABLE APPLICATION (28USC § 2254 (d)(1)) OF SUPERINTENDENT -V- HILL (1985) 472 US 445 105 s.ct 2768 WHEN PAROLE DENIED, VIOLATING 14TH AMEND. LIBERTY INTEREST.

(1) Supporting FACTS:

Please See Amendment /Supplement Pages 16 - 36

_____

_____

_____

(2) Did you raise this claim on ~~direct appeal~~ HABEAS CORPUS to the California Court of Appeal?    ☒ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

b. Ground two: Parole denied because State Court Orders violated 28USC § 2254(d)(2) WHICH VIOLATED 14TH AMEND. LIBERTY INTEREST

(1) Supporting FACTS:

Please See Amendment /Supplement Pages 37 - 40

_____

_____

_____

(2) Did you raise this claim on ~~direct appeal~~ HABEAS CORPUS to the California Court of Appeal?    ☒ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

  c.  Ground three: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on ~~direct appeal~~ **HABEAS CORPUS** to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

  d.  Ground four: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on ~~direct appeal~~ **HABEAS CORPUS** to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

  e.  Ground five: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on ~~direct appeal~~ **HABEAS CORPUS** to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

8.  If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

9.  Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes    ☒ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available):*

a.  (1) Name of court: **N/A** _____

   (2) Case number: _____

   (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing):* _____

   (4) Grounds raised *(list each):*

   (a) _____

   (b) _____

   (c) _____

   (d) _____

   (e) _____

   (f) _____

   (5) Date of decision: _____

   (6) Result _____

   (7) Was an evidentiary hearing held?    ☐ Yes   ☐ No

b.  (1) Name of court: **N/A** _____

   (2) Case number: _____

   (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing):* _____

   (4) Grounds raised *(list each):*

   (a) _____

   (b) _____

   (c) _____

   (d) _____

   (e) _____

   (f) _____

   (5) Date of decision: _____

   (6) Result _____

(7) Was an evidentiary hearing held?        ☐ Yes  ☐ No

10. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect **(CT)**
to this judgment of conviction?        ☐ Yes  ☒ No   HOWEVER, IN THIS COURT, CASE NO. _SAQV 05-1026 CAS_
If so, give the following information *(and attach a copy of the petition if available)*:   FROM LAST PAROLE HEARING STILL .

   (1) Name of court: _____

   (2) Case number: _____

   (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

   (4) Grounds raised *(list each)*:

       (a) _____

       (b) _____

       (c) _____

       (d) _____

       (e) _____

       (f) _____

11. Are you presently represented by counsel?        ☐ Yes  ☒ No

   If so, provide name, address and telephone number: _____

   _____

   _____


WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding,


_N/A_ _____

*Signature of Attorney (if any)*


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.


Executed on   7/26/07 _____        x ~~Willa Mil Ak~~ _____
                *Date*                              *Signature of Petitioner*

WILLIAM BRADSHAW
_____
*Petitioner*

B. CURRY, WARDEN (A), et al
_____
*Respondent(s)*

**DECLARATION IN SUPPORT
OF REQUEST
TO PROCEED
IN FORMA PAUPERIS**

✱ NOTE ⑧ ON �__7__ /26/01 COUNSELOR GIVEN ENVELOPE FOR $5.⁰⁰ TO BE SENT TO COURT.

I, __N/A_____, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?  ☐ Yes    ☐ No

    a. If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer. _____
    _____

    b. If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. _____

2. Have you received, within the past twelve months, any money from any of the following sources?

    a. Business, profession or form of self-employment?   ☐ Yes   ☐ No
    b. Rent payments, interest or dividends?   ☐ Yes   ☐ No
    c. Pensions, annuities or life insurance payments?   ☐ Yes   ☐ No
    d. Gifts or inheritances?   ☐ Yes   ☐ No
    e. Any other sources?   ☐ Yes   ☐ No

    If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months: _____
    _____
    _____

3. Do you own any cash, or do you have money in a checking or savings account? *(Include any funds in prison accounts)*
    ☐ Yes    ☐ No
    If the answer is yes, state the total value of the items owned: _____
    _____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property? *(Excluding ordinary household furnishings and clothing)* ☐ Yes   ☐ No

If the answer is yes, describe the property and state its approximate value: _____

_____

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support: _____

_____

_____

I, declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Executed on _____        _____N/A_____
                        *Date*                                      *Signature of Petitioner*

## CERTIFICATE

I hereby certify that the Petitioner herein has the sum of $_____ on account to his credit at the _____ institution where he is confined. I further certify that Petitioner likewise has the following securities to his credit according to the records of said institution: _____

_____

_____

_____        _____N/A_____
            *Date*                                      *Authorized Officer of Institution/Title of Officer*

1  WILLIAM BRADSHAW (D-73217)
   P.O. BOX 689, CTF-CENTRAL
2  GW-325-LOW
   SOLEDAD, CA  93960-0689
3     (IN PRO PER)

4

5

6

7

8          IN  THE  UNITED  STATES  DISTRICT  COURT

9       FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

10

11

12

13  WILLIAM  BRADSHAW                AMENDMENT / SUPPLEMENT
        (PETITIONER)                 IN SUPPORT OF 28 USC § 2254
14

15        -v-

16

17  B. CURRY, WARDEN (A), et al
        (RESPONDENT(S))
18

19

20

21

22

23

24

25

26

27              AMENDMENT / SUPPLEMENT
                    11 of 92
28

## INTRODUCTION

After conviction for 2nd Degree Murder in 1987 and arrival in prison on 12/16/87, Petitioner's LIFE TERM of 15-to-life began 12/16/87.

At Petitioner's 5TH Parole Consideration Hearing, which occured 2/8/06, he was once again denied parole suitability. It is these actions now challenged.

Relevant portions of the entire State Record are accompanied in Petitioner's Lodgements ... seperately but contemporaneously filed. To avoid being pedantic or duplicitous, Petitioner will reference said lodgements as necessary.

## ADOPTION / INCORPORATION

Petitioner adopts and incorporates, as if fully stated herein, the lodgement(s) as filed. It is Petitioner's intent to have these lodgements as part of the record in this case.

## LODGEMENTS

I : 2006 PAROLE HEARING DECISION TRANSCRIPTS

II : SUPERIOR COURT ORDER

III : APPELLATE COURT ORDER

IV : CAL. SUPREME COURT PETITION FOR REVIEW

V : CAL. SUPREME COURT ORDER DENYING RELIEF

VI : PSYCH REPORT

AMENDMENT / SUPPLEMENT
12 of 42

## JURISDICTION

Subject matter Jurisdiction is appropriate pursuant to 28 USC § 2254 and 28 USC § 1331.

## VENUE

Venue is appropriate pursuant to 28 USC § 84 and 28 USC § 2241 (d).

## PARTIES

William Bradshaw (Petitioner) was convicted of 2nd Degree Murder, out of Orange County, California. He is a citizen of the United States and a current resident located in Monterey County, California.

B. Curry, Warden (A) of Correctional Training Facility - Soledad and is the properly named Respondent for purposes of 28 USC § 2254.

Counsel for Respondent is Edmund G. Brown, Jr., Attorney General and/or Office of the Calif. Attorney General. All copies of filings have been / will be sent to said Counsel.

## LODGEMENTS

For purpose of expediency and clarification all relevant documents have been lodged in a seperate document entitled "Lodgements in Support of 28 USC § 2254" Simultaneously Filed 7 /26/07.

## EVIDENTIARY HEARING

AN EVIDENTIARY HEARING SHOULD BE GRANTED IN LIGHT OF REFUSAL OF STATE TO PROVIDE ONE. TAYLOR-V-MADDOX (CA9 2004) 366 F.3d 992.

AMMENDMENT / SUPPLEMENT
13 of 42

<u>TIMELINESS</u>

Petitioner contends his 28 USC §2254 Petition is timely under the AEDPA's 1-year time limits as follows:

The parole consideration hearing being challenged occured 2/8/06. It wasn't "Final" for purposes of the official "Factual Predicate" until 6/8/06 (1 YEAR AEDPA start).

ORANGE COUNTY WRIT FILED: 7/25/06

ORANGE COUNTY WRIT DENIED: 8/18/06

4TH DIST APPELLATE WRIT FILED: 10/13/06

4TH DIST APPELLATE WRIT DENIED: 11/30/06

Pet. for Review (Cal.Sup.Ct.) Filed: 12/10/06

Pet. for Review (Cal.Sup.Ct.) Denied: 3/14/07

IN SUMMARY, ±47 DAYS LAPSED BETWEEN <u>FINALITY</u> OF TRANSCRIPTS AND STATE SUPERIOR COURT <u>FILING</u>. TIME WAS <u>TOLLED</u>.

SUBSEQUENTLY, SINCE THE STATES HIGH COURT DENIED THE PETITION FOR REVIEW, ONLY ±134 ADDITIONAL DAYS HAVE LAPSED. CONSEQUENTLY, ONLY ±181 DAYS OF THE AEDPA TIME LIMIT ARE FORFEIT.

THUS, PETITIONER'S WRIT FOR HABEAS CORPUS UNDER 28 USC §2254 is <u>Timely!</u>

AMENDMENT / SUPPLEMENT
<u>14</u> of <u>92</u>

## STANDARD OF REVIEW

IN ORDER FOR PETITIONER TO ACQUIRE RELIEF THROUGH 28 USC §2254, he must gain access through the gateways of 28 USC §2254(d)(1) and 28 USC §2254(d)(2).

Relief is proper if Petitioner establishes a prima facie case that, under 28 USC §2254(d)(1), that either (A) the State Court's ruling was "contrary to" U.S.S.Ct. precedent, or (B) the State Court's ruling was an order being an "unreasonable application" of controlling U.S. S.Ct. holdings: see, e.g. Williams v. Taylor (2000) 120 S.Ct. 1495, 1519-20, 529 US 362.

Under the alternate prong of review, under 28 USC 2254(d)(2), Petitioner has to prove that the State's determination of facts were an "unreasonable determination of the facts in light of the evidence presented" and the evidence is "clear and convincing" — 28 USC §2254(e)(1) — in his favor.

Under the 28 USC §2254(d)(1) "unreasonable application" analysis, the action must be "objectively unreasonable." Rice v. Collins (2006) 546 US ___, ___ S.Ct ___ has held that the §2254(d)(1) / §2254(d)(2) standards are distinct.

It can be fairly analyzed:

28 USC §2254(d)(1) "contrary to" — questions of law

28 USC §2254(d)(1) "unreasonable application" — mixed questions of law and fact

28 USC §2254(d)(2) ———————— Questions of fact under state law.

( GROUND NO. 1 )

Petitioner contends, in violation of 28 USC § 2254 (d)(1), that the Calif. Court orders used to deny Federal liberty interest in parole are "contrary to" / "unreasonable application" of the "some evidence" test held in Superintendent ... -v- Hill (1985) 472 US 445, 105 Sct. 2768.

[1] As excerpted from Lodgement "I", Petitioner was denied his Federal 14TH Amend. liberty interest in parole, based on the following:

[THE CRIME]

" The offense was carried out in an especially cruel and callous manner in that you shot your vulnerable, estranged wife in the chest and knee. And she died due to gunshot wounds to the chest and injuries to the head where you hit her as she lay dying on the bed " - p. 78 Decision Page (hereafter D.P.) 1, lines 1-18

" The offense was carried out in a manner demonstrating exceptionally callous disregard for human suffering and you had previously ransacked your victim's home thereby instilling fear and terror in her. - p. 78 D.P. 1 lines 22-26 / p. 78 D.P. 2 line 1

" The offense was carried out in a dispassionate and calculated manner in that after repeatedly telephoning and threatening the life of Robert Persons you went to the victim's residence armed." p. 78 D.P. 1 lines 18-22

[PRIOR ADDICTION]

" However, you do have a record of alcohol and poly-substance abuse to which you have readily admitted - p. 79 D.P. 2 lines 4-6

AMENDMENT / SUPPLEMENT
16 of 92

1  [1 cont.]

2                          [PROGRAM]

3  " You have programmed within -- I would say

4    a limited manner [.]" -p. 79 D.P. 2 lines 7-8

5                  [Counseling / Disciplinary]

6  " You do, however, have one 115, 2004, for

7    possession of contraband. and one 128(a), that

8    was in 1994 for smoking." - p. 79 D.P. 2 lines

     18-21

9                      [PAROLE PLANS]

10 " As to your parole plans, you have what this

11   Board considers questionable parole plans for

     residence in your last county -- excuse me --

12   in California. That would be with your now wife,

13   Elizabeth Bradshaw in Anaheim. Questionable

     because the two of you have never lived together.

14   Are they realistic? I don't know. But we did

     discuss with you alternatives. And you have

15   thought through alternatives. So that is -- you're

16   to be commended for that and you do have that

     possibility in your mind." p. 79 D.P. 2 lines 23-26 /

17   p. 80 D.P. 3 lines 1-8

18                   [D/A's opposition]

19 " Penal Code 3042 responses indicate opposition to --

20   finding of parole suitability, specifically by the

     District Attorney of Orange County." p. 80 D.P. 3

21   lines 13-16

22 [2]  The above grounds were fairly presented to California's

23      highest court, i.e. Supreme Court of California.

24 [3]  As previously stated, Petitioner was convicted, by

25      plea bargain but has not received the reciprocal

26      benefit of the implied lesser sentence for 2nd Degree

27      murder.      AMENDMENT / SUPPLEMENT
                          17 of 92

28

[4] Petitioner's commitment offense occured 10/10/1986 and he was committed to prison on 12/16/1987. The life term began this day also, in 1987.

[5] In this instant petition, after Petitioner's Initial Parole hearing occuring in 1997, he is challenging his 4TH Subsequent Parole Consideration hearing (5TH Parole Hearing overall) as related to his 15-to-life sentence + 19 years after the commitment offense.

[6] At Petitioner's Initial Parole Hearing in 1997, he was denied parole for 2 years.

[7] Next, Petitioner was denied parole for 4 years at his 1st subsequent parole hearing occuring in 1999.

[8] During the 2nd subsequent parole hearing of 2003, Petitioner received a 1-year denial.

[9] After the 1-year denial of 2003, Petitioner received nother 1 year denial in 2004.

[10] Finally, after 8 years of denials, once again parole was denied in 2006 but for 1 years.

[11] Based on the 3-tier Court system of California the only relevant order is the Superior Court's [see Lodgement " II "] because there were no later reasoned opinions by either the Appellate Court 4TH District of California or California Supreme Court. [Lodgements III and V]

[12] The Superior Court's order never mentions the applicable "some evidence" test for judicial review.

AMENDMENT / SUPPLEMENT
18 of 42

[13] The only reasoned opinion (order), see Lodgement "II", only reviews what standard(s) the Parole Board applied.

[14] The D/A's statement didn't add any new evidence to consider for parole unsuitability. The Board was to be limited by the D/A's statements per CCR § 2030(d)(1) oral statements. They are not unsuitability criteria!

[15] Regarding parole plans, Petitioner has realistic parole plans, i.e. to live with his retired wife where they would both reside in the same residence with an approximate $5000 /month income from their cumulative incomes. There was no evidence presented to consider residential parole plans being "questionable."

[16] Further, the record was entirely devoid of any evidence, predicting an unreasonable threat to society, based on an administrative rules violation report (contraband mini screwdriver) and custodial counseling chrono. For "unsuitability", "serious" rules violations are listed.

[17] Regarding Petitioner's "program", the BPH panel notes, as excerpted: [From Parole Hearing Transcript]

  (A) "[T]he correctional counselor notes your physical limitations medical chrono." - p.33 ℓ 8-10

  (B) " Excellent. Custodial History. You've remained at CTF... You've assigned ... since 2002 .... [As] a clerk, then ... towing porter and ... back to wing clerk." - p.24 ℓ 22 - p. 25 ℓ 2

[17 cont.]

    (C) "The counselor talks about ... above average work
        reports." - p. 25 ℓ 3-5

    (D) "[A] laudatory chrono by your work supervisor." -
        p. 25 ℓ 5-6

    (E) "You've been an active participant in Narcotics
        Anonymous." - p. 25 ℓ 12-13

    (F) "You completed the Family Effectiveness Training.
        Harmony in the Home self-help program." - p. 25
        ℓ 13-15

    (G) "You have ... a certificate of completion For Anger
        Management course." - p. 25 ℓ 15-19

    (H) "And you have also successfully completed a series
        of lectures entitled How to Become A Father And Not
        Get Angry ." - p. 25 ℓ 19-21

    (I) "[I]n '89 you were working in industries as a
        sewing machine operator, in 1990 in the Knitting
        mill." - p 34 ℓ 3-5

    (J) "From '90 to '93 you completed the vocational sewing
        machine repair." - p. 34 ℓ 5-6

    (K) "In '97 you got a certificate of completion For vocational
        appliance repair." - p. 34 ℓ 6-8

NOTE: THIS RECORD REFUTES A LIMITED PROGRAM

[18] Notwithstanding the aforementioned, in the multi-year
denial of set of the transcripts, the Board reiterated
the crime facts previously stated (almost verbatim),

[18 cont.]

mentioned motive, and harped on how he couldn't achieve the necessary self-help / therapy in 1 year.

" The Board recommends ... Get self-help and get therapy as its available. And additionally develop self-help techniques to assist you in dealing with the consequences of this GRAVE offense. Sir, when self-help is not available in terms of PROGRAMS, you can read... And you can make book reports to this Panel... And our concern is that we see before us a man who has somewhat accepted and is on the road to accepting what you have done." – p. 82 D.P.5 lines 2-15

"What we're asking you to do is make a lot of PROGRESS and you probably couldn't do that in a year if you started today. So we think the two year denial is in a way better for you."

[19] As part of the Record, the BPH Deputy Commissioner referred to a 12-29-05 psychological evaluation by Ph.D. Macombee during the proceeding at page 25 ℓ22-25, page 26 ℓ1-14 and page 32 ℓ22-24. At Lodgement "<u>VI</u>", the Psych Report is included.

[20] Part of the Psych Report stated at Page Three, Part XIII in part: "<u>At this point in time, there is no need for further self-help GROUPS or participation in therapy PROGRAMS. His understanding, self-awareness and insight are excellent.</u>" [Emphasis Added]

[21] Regarding self-help / therapy the evidence before the BPH Panel refutes their analysis.

AMENDMENT / SUPPLEMENT
<u>21 of 42</u>

[22] Further, based on #[18] supra, regarding acceptance/insight, the BPH Panel has also disregarded the Psych Report (Lodgement "VI"), PAGE TWO/THREE, part XIII:

"Inmate Bradshaw discussed the commitment offense in detail. He accepts Full responsibility for the victim's death. He does not attempt to rationalize or minimize his behavior in the commitment offense."

[23] The evidence before the Board refutes their rationale, because there is no indicia of reliability for the Board's multi-year rationale.

[24] Although the Board cites jealousy as motive, it is neither inexplicable nor trivial to deny parole. Many BPH cases show jealousy being in parameters for murder. The Board made no comparisons.

[25] Regarding Petitioner's prior alcohol/poly-substance abuse, a disability within the meaning of the Americans with Disabilities Act, he was denied the benefit of parole because of his prior disability.

[26] Referring this Court back to Lodgement "VI", Page Four Part XIV:

"There are no significant risk factors in this case at this time. In the past, drug and alcohol use was a significant risk factor, which ... is no longer a risk." [Emphasis Added]

AMENDMENT / SUPPLEMENT
22 of 42

27) Also, regarding abuse of alcohol/polysubstance abuse Lodgement "VII" Part XII, page two in part:

"Inmate Bradshaw could be considered to have a prior polysubstance dependence, by history. However, he does not meet the criteria of having a current diagnostic label of drug dependence because he has been clean and sober now for 20 years ... He has a very firm commitment to absolutely avoid any use of drugs or alcohol in the future. He understands how destructive and devastating drug and alcohol use can be in a person's life. Therefore, this label will not be listed as a current problem.

28) Here, the evidence absolutely refutes the Board's reliance on 20 year old substance abuse.

29) Related to the crime itself, CCR § 2402 (c)(1) #'s (A-D) apply to unsuitability.

(A) The record is devoid of the fact(s) necessary to make the commitment offense an "execution-style murder."

(B) The facts cited by the board do not prove an exceptionally callous disregard for human suffering.

(C) Petitioner's actions do not show how the commitment offense was "especially cruel and callous".

30) As previously stated, this was Petitioner's 5TH parole hearing, where he has now served more physical time than the minimum 15 years of the 15 to-life term.

31) Notwithstanding the current facts used to deny parole, they were used as follows in the past:

AMENDMENT / SUPPLEMENT
23 of 42

1  [31 cont.]

2          1997 - 2 YEAR DENIAL

3    - COMMITMENT OFFENSE
     - UNSTABLE SOCIAL HISTORY
4    - PSYCHOLOGICAL REPORT NOT TOTALLY SUPPORTIVE

5          1999 - 4 YEAR DENIAL

6    - COMMITMENT OFFENSE
7    - UNSTABLE SOCIAL HISTORY
     - NEED FOR SELF-HELP/ THERAPY
8    - DA's OPPOSITION

9          2003 - 1 YEAR DENIAL

10   - COMMITMENT OFFENSE
     - UNSTABLE SOCIAL HISTORY
11   - NEED FOR SELF-HELP / THERAPY
12   - OPPOSITION BY DA / ANAHEIM P.D.

13         2004 - 1 YEAR DENIAL

14   - COMMITMENT OFFENSE
     - NEED FOR SELF-HELP / THERAPY
15   - OPPOSITION BY DA
16   - UNSTABLE SOCIAL HISTORY.

17

18  [32] Attached at Lodgement III is a true copy of the
19     the Petition For Review to the Calif. Supreme Court.

20  [33] AT PETITIONER'S HEARING, THE PANEL HAD HIS CENTRAL(C) -
21     FILE + "All I can tell you is whats -- whats in the C-File
22     and what date it is." - Deputy Commissioner Filangeri p. 4
23     l 14-16. The Board thus REVIEWED: 11/18/03 SELF HELP CHRONO;
24     6/15/95 "LIFESKILLS" CHRONO; 12/7/90 SELF-ESTEEM CHRONO;
25     1/28/91 STRESS MANAGEMENT/RELAXATION CHRONO; 6/14/91 REALITY
26     AND DECISION CHRONO; 5/18/92 GROUP THERAPY CHRONO; 2/03/93
       DEPRESSION THERAPY GROUP CHRONO; 9/4/92 ONE-ON-ONE PSYCHOTHERAPY;
27             AMENDMENT / SUPPLEMENT
                   24 of 92
28   AND 6/18/93 22 SESSION SUBSTANCE ABUSE THERAPY TO NAME A FEW.

MEMORANDUM OF POINTS AND AUTHORITIES

[CONTRARY TO']

Petitioner proffers that the Calif. Judiciary orders were "contrary to" the holding of Superintendent ... -v- Hill (1985) 472 US 445, 105 S.Ct. 2768. Hamdi -v- Rumsfeld (2004) 542 US 507, 124 S.Ct 2633:

> "[W]e have utilized the "some evidence" standard in the past as a standard of review, not a standard of proof."

Thus, where the Calif. Judiciary never applied a standard of review, but only cited to interpretive law on Parole Board's standard of proof. Clearly, a contradiction of "some evidence" test.

Superintendent -v- Hill, supra, at p. 2775:

> "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached .... The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."

U.S. -v- Armstrong (9TH Cir. 1995) 48 F.3d 1508, 1512: "Of course, "some evidence" means the showing must be more than frivolous and based on more than conclusory allegations." Here, the Calif. Judiciary only made conclusory allegations, contrary to what the law makes "evidence" to be.

Unequivocally, the law (as applied by State Courts) contradicted the "some evidence" test of Hill, supra.

The same year as Hill, supra, the HIGH COURT also ruled in Evitts -v- Lucey (1985) 105 S.Ct 830, 469 US 388; and Walters -v- Nat. Assn. of Radiation Survivors (1985) 473 US 305, 105 S.Ct. 3180, 87 L.Ed 2d 220 (Evitts, or Walters, hereafter).

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  Keeping in mind that there was no State Evidentiary hearing,

3  the state courts upholding the BPH's Factfinding should necessitate

4  a federal evidentiary hearing.

5  Irons-v-Carey (CA9 Cal.2007) 479 F.3d 658, 662:

6  "When we assess whether a state parole board's

7  suitability determination was supported by "some

    evidence," in a habeas case, our analysis is framed

8  by the statutes and regulations governing parole

    suitability determinations in the relevant state....

9  Accordingly, here we must look to California law

    to determine the findings that are necessary to

10  deem a prisoner unsuitable for parole, and then

11  must review the record in order to determine whether

    the state court decision holding that these findings

12  were supported by "some evidence".

13  Hereafter, petitioner addresses his identified reasons the board

14  denied parole, in order, with exception that the crime

15  will be addressed last.

16  There is no evidence that Petitioner's prior abuse of substances

17  establishes he is a current threat to society. In Re Mark Smith

18  (2003) 109 Cal.App.4TH 489, 505, 134 Cal.Rptr.2d 781, 792 "[A] prisoner's

19  prior addiction is not an appropriate consideration in determining

20  parole suitability." Thompson: Bogovich -v-Davis (CA9 Cal.2002)

21  (parole hearings are public programs covered by ADA and parole

22  can't be denied on Petitioner's history of substance abuse). ~295

23  F.3d 890

24

25  There is no evidence that Petitioner has programmed in

26  a limited manner or needs more self-help/therapy.

27  AMENDMENT/SUPPLEMENT

    27 of 42

28

<u>MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED</u>

The aforementioned facts and Psych Report disprove the Board's rote and mechanical analysis for program/self-help/therapy being needed. In <u>Willis -v- Kane</u> (USDC N.D. Cal. 2007) ___ F.Supp 2d ___, 2007 WL 1232060 : In light of the favorable psychological reports and the absence of any mention therein of a need for further self-help or therapy programming, there was not some evidence to support ... Willis had not sufficiently participated in beneficial self-help and therapy programming." Petitioner is in the same situation. The Board has <u>CCR § 2402(c)(5)</u> : Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense." The record is devoid of any CCR § 2402(c)(5) criteria. Additionally, <u>In Re David Barker</u> (Cal App. 2nd Dist. 2007) 2007 DJDAR 7548, **7555** :

> " Reversing the Board's ... finding, that Barker needed therapy, none of the psychological reports in the record mentions need for therapy, ... These conclusions, of course, are the opinions of trained experts, all of whom said Barker did not need therapy. We are troubled therefore by ... a boilerplate finding that seems to make its way into every denial of parole, whatever the record — and despite repeated criticisms from the courts."

Additionally, there is no evidence to substantiate that Petitioner's 128(a) and Administrative 115 fell within the unsuitability circumstance of <u>CCR § 2402 (c)(6)</u>

AMENDMENT / SUPPLEMENT<br><u>28 of 42</u>

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

" Institutional Behavior. The prisoner has engaged
in serious misconduct in prison or jail."

A CDC 128(a) is a "counseling chrono" not disciplinary, and
is for minor not serious misconduct (see In Re Mark Smith, supra
at p.792). Also, the possession of the screwdriver being "administrative"
was not evidence that Petitioner poses an unreasonable threat
to society under the "serious" parameters of CCR§ 2402(c)(6).
Here, the Board even disregard the long established holding of
Cafeteria Workers -v- McElroy (1961) 367 US 886, 6 L.Ed.2d 1230, 1236,
81 S.Ct. 1743: "[D]ue process, unlike some legal rules, is not a
technical conception with a fixed content unrelated to time, place,
and circumstances." It is "compounded of history, reason, and the
past course of decisions...." [Emphasis Added]

   Jancsek -v- Oregon Bd. of Parole (9th Cir. 1987) 833 F.2d 1389, 1390: The
evidence underlying the [Parole] board's decision must have some
indicia of reliability." In secundo, prison misbehavior can
be but is not always the same as criminal behavior, thus
it is analogous for determining threat to public: when prison
misbehavior is so minor in nature that it isn't a crime the prison
disciplinary process itself should be enough punishment.




   THERE WAS ALSO NO EVIDENCE TO DEEM PETITIONER'S
PAROLE PLANS (i.e. to live with his wife) were questionable.
California being a community property state, and Petitioner
                    AMENDMENT / SUPPLEMENT
                         29 of 42

1  <u>MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED</u>

2  having the State and Federal Constitutional rights to marry do

3  not make his plans to reside with his "wife" questionable.

4  <u>In re Libee R. Andrade</u> 2006 DAR 9682 (7/26/06) 141 Cal. App. 4th

5  807, 46 Cal. Rptr. 3d 317 review denied 11/1/06 has clarified what

6  is expected when it comes to parole plans:

7      " Here the regulation requires an inmate to have
       "realistic plans for release" or "developed marketable
8      skills that can be put to use upon release." ··· Thus,
       based on its clear language, the regulations requirement
9      that an inmate have parole plans is limited to
       requiring realistic plans. The entire thrust of the
10     regulation is practicality .... More importantly,
       the regulation does not suggest that such fool-proof
11     plans are necessary. The plain language of the
       regulation [i.e. CCR§2402(d)(8)-Circumstance Tending to
12     show suitability] supports the opposite conclusion. By
       referring to "realistic" parole plans, the regulation
13     does not contemplate iron-clad and unrealistic plans."

14

15

16

17

18     Furthermore, the DA's opposition to parole is not evidence

19  of parole unsuitability. <u>The Los Angeles County Superior Court</u>

20  in the case of <u>In re Robert Rosenkrantz</u>, Case No. BH003529, on

21  6/26/06, appeal denied, petition for review by Respondent denied has

22  affirmatively settled what use the DA's opposition plays. Specifically:

23     " The Board further stated in its decision that the
       Deputy District Attorney --- opposed parole while the
24     Board is required to consider such opposition ··· that
       opposition is not a factor on which the Board may rely
25     to deny parole as enumerated in title 15, section
       2281 of the Cal. Code of Regulations." [A]
26
   [A] CCR§2400 et seq, same criteria
27              AMENDMENT/SUPPLEMENT
                  <u>30</u> of <u>42</u>
28

1  <u>MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED</u>

2  Both Res Judicata/Collateral Estoppel should bar any petition

3  on this ability of the BPH's use of DA's opposition as evidence

4  of unsuitability.

5

6

7      Finally, there is no evidence in the record to suggest

8  that the commitment offense (A) still offers predictability after

9  20 years and (B) that it was "especially cruel and callous".

10 To begin, Petitioner refreshes this Court's memory of the allegedly

11 applicable Title 15 sections, as used by the Board.

12      <u>CCR §2402(c)(1)</u>'s circumstance of "especially heinous,

13      atrocious, or cruel", to be supported by factor(s) of:

14      <u>CCR§2402(c)(1)(B)</u>'s "The offense was carried out in a
          dispassionate and calculated manner,

15          such as an execution-style murder.

16      <u>CCR§2402(c)(1)(D)</u>'s "The offense was carried out in a manner
          which demonstrates an exceptionally

17          callous disregard for human suffering.

18      <u>CCR§2402(c)(1)(E)</u>'s "The motive for the crime is inexplicable
          or very trivial in relation to the

19          offense."

20     In the instant case, "motive" was only used in the multi-year

21 denial; Moreover, the motive for the crime was very trivial in

22 relation to the offense in that it was jealousy." - p.81 D.P. 4

23 lines 15-17. The Board made no comparisons in the record as

24 required by <u>In Re Scott</u> 119 Cal. App. 4TH 871, 15 Cal. Rptr 3d 32 (trivial

25 motives require comparisons). Petitioner proffers that "jealousy"

26 is within the norms (statistically) of murder. <u>In Re LAWRENCE</u>,

27                AMENDMENT/SUPPLEMENT
                       31 of 42

28

1     MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2   infra, Fn.116 cite to In Re Scott, ~~infra~~, 133 Cal.App.4TH at page 579

3   (In In Re Scott, a wayword wife told her husband she was leaving

4   her lover and returning to the husband, but then didn't show up. In a

5   rage, the husband drove over to the lover's house and shot him in the

6   head with a rifle.)

7     Referring back to Gnd.1 #1, this Court can see that

8   when the Board alleged "dispassionate and calculated", it referred

9   to no scenario even close to an "execution-style murder". Also,

10   in the BPH panel's zeal to create rationale it claimed: the

11   offense was carried out and manner demonstrating ~~an~~ exceptionally

12   callous disregard for human suffering" with no facts to

13   substantiate more suffering was inflicted than needed to commit

14   the murder.

15     As excerpted from 12/4/87 Orange County probation report,

16   from 4TH Subsequent Hearing Transcript p.10 lines 24-27/p.11 l 1-2:

17        "The autopsy results indicate that the victim

18        had been shot in the chest and knee and had

19        <u>died due to the gunshot wound to the chest and</u>

         <u>injuries to the victims head.</u>" [Emphasis Added]

20     Here, the record only reflects the minimum actions

21   to cause death included the chest wound and head injuries.

22    In re Ernest Smith (Cal.App. 6TH Dist. 2003) 114 Cal.App.4TH 343,367,

23   ___ Cal.Rptr.3d ___ : (parameters of exceptionally callous disregard for

24   suffering is A) defendant acted with cold, calculated dispassion; or

25   (B) gratuitously increased or unnecessarily prolonged pain and

26   suffering).

27               AMENDMENT/SUPPLEMENT

                 <u>32</u> of <u>42</u>

28

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  Similarly, Petitioner's case also follows In Re Sandra Davis

3  LAWRENCE (Cal. App. 2nd Dist. 2007) __ Cal. Rptr 3d __ , 2007 WL 147-

4  5283:

5       "Nothing suggests those wounds were inflicted to
        cause Mrs. Williams more pain than required to

6       kill her.... Similarly, if the Governor's Finding
        Lawrence exhibited an "exceptionally callous

7       disregard for human suffering" suggests she
        intentionally inflicted more suffering than

8       needed to commit the murder, that Finding
        likewise is inconsistent with the evidence."

9

10  Simply put, there is no evidence to substantiate the

11  commitment offense is/was especially cruel and callous.

12

13

14      Notwithstanding how Petitioner has established there is no

15  evidence for CCR § 2402 (c)(1)(2)(3)(4)(5) or (6) unsuitability,

16  there is also no evidence that the relied upon immutable

17  (unchanging) factors currently used show Petitioner is a

18  threat to society. In Re Lawrence, supra, at p. __:

19      "Thus, if as some of the federal cases hold the
        predictive value of the commitment [offense]

20      crime dissipates to the point it cannot satisfy
        the "some evidence" standard 17 to 20 years

21      after its commission.... Unlike Biggs, Sass, Irons,
        Lawrence has served far beyond the "minimum

22
        number of years required by her sentence."

23

24  Irons -v- Carey (CAP Cal. 2007) 479 F.3d 658 (in certain cases

25  due process may not be violated before minimum term is

26  physically served excluding goodtime credits). Petitioner is

27  also beyond his minimum. THE 14TH AMENDMENTS "DUE PROCESS" LIBERTY
    INTEREST WAS VIOLATED.    AMENDMENT/SUPPLEMENT

28                          33 of 42

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED
(UNREASONABLE APPLICATION)

Because Petitioner is seeking review under 28 USC § 2254(d)(1) the "unreasonable application" analysis of Superintendent-v-Hill (supra) "some evidence" should also be reviewed. Deference is owed to the State's reasoning only when not "objectively unreasonable". Thus, Petitioner proffers, based on the same set of operative facts and supporting documents (Lodgements) that the Board's findings as upheld by the State Judiciary of California were also "objectively unreasonable". Here, where the California courts did not properly apply the "some evidence" test to the facts (mixed question of law and facts), there can be no state finding of a proper assessment in light of the record the state courts had before them (see Holland-v-Jackson (2004) 124 S.Ct. 2736, 2737-38).

Further, Williams-v-Taylor (2000) 120 S.Ct. 1495, 1519-20, 529 US 362 ("unreasonable application" when state unreasonably refuses to extend the proper principle and its restrictions to a new context where it should apply). Under the "some evidence" test, where Petitioner has established the parole board's ruling is arbitrary, capricious, lacking basis in fact or contrary to law; THERE CAN BE NO EVIDENCE TO DENY 14TH AMENDMENT LIBERTY INTEREST IN PAROLE.

In the California parole hearing context, the "some evidence" precedent is not ambiguous to deny relief,

AMENDMENT/SUPPLEMENT
34 of 42

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

Where state and federal courts have judicially determined the parameters of what is "some evidence" and what is not/no longer "some evidence": deference cannot be paid to support findings contrary to law.

Arkansas-v-Oklahoma (1992) 112 S.Ct. 1046,1060, 503 US 92 warned: "As we have often said an agency ruling is 'arbitrary and capricious' if the agency has ... entirely failed to consider an important aspect of the problem." Petitioner has established a prima facie case of the state courts orders ("look-through" rule - Ylst-v-Nunnemaker (1991) 501 US 797, 803, 111 S.Ct 2590, 115 L.Ed 2d 706 ) were objectively unreasonable

Wolff-v-McDonnell (1974) 418 US 539,558, 94 S.Ct-2963, 2976 (Guaranteed protection of the individual against arbitrary action of government). Also, Oregon Natural Resources Council -v-Lowe (9thCir. 1997) 109 F.3d 521,526 : "Although review under the arbitrary and capricious standard is narrow, the agency must articulate a rational connection between the facts found and the conclusions made-"(*) Petitioner has established how the BPH's actions were not rational.

Additionally favorable to support Petitioner is entitled to relief is Newman-v-Apfel (9thCir. 2000) 223 F.3d 937, 943 (agency having discretion can't justify reasons based on specious grounds), and Enrico's. Inc.-v-Rice (9thCir. 1984) 730 F.2d 1250, 1253 (an agency must follow the correct interpretation of a rule or regulation). The BPH's camouflage is blatant and disingenuous.

(*) Emphasis Added

AMENDMENT/SUPPLEMENT
35 of 42

1  MEMORANDUM OF POINTS AND AUTHORITIES continued

2  Briefly mentioning the conviction for 2nd degree murder,
3  by plea bargain, in light of the aforementioned cases. where
4  the minimum was 15 years and petitioner is ± 20 years
5  into the incarceration, it is objectively unreasonable to
6  expect him to serve time for 1st degree murder. In Re
7  Cornelio Carabes (Cal. App. 5ᵀᴴ Dist. 1983) 193 Cal Rptr 65 (The court
8  noted it is unrealistic to assume [A] petitioner will serve
9  a life term or a substantial part of the life term beyond the
10 minimum). The absurdity of the system comes to light
11 when put into the following perspective: (A) ± 20 years of
12 actual incarceration; (B) At least 12 months of Good-time Credit
13 Forthcoming and (C) the maximum of the 2nd degree matrix
14 being 21 years.

15 Where the commitment offense doesn't have any current
16 value to the unsuitability question; the prior addictions not
17 being valid to use for unsuitability; record is devoid of
18 any valid rationale for further self-help; minor counseling
19 and disciplinary show no risk to society; parole plans to
20 reside with wife are valid and DA's opposition to parole
21 unsuitability is not "some evidence" the California
22 Courts also failed to apply Superintendent ... -v- Hill,
23 supra, in an objectively reasonable manner.
24 There is no dispute about petitioner's having accepted full
25 responsibility, and In Re David Barker, supra, at p. 7556 (no minimum
26 time requirement so long as the inmate genuinely accepts
27 responsibility)." UNDER THE ALTERNATIVE 28 USC § 2254 (d)(2) prong, Due Process
   clause of 14ᵀᴴ Amend. violated.    AMENDMENT/SUPPLEMENT
28                                      36 of 42

( GROUND No. 1 )

Petitioner contends, in violation of 28 USC § 2254 (d)(2), that the Calif. Court orders used to deny Federal liberty interest in parole are an "unreasonable determination of the facts in light of the evidence presented" because the "clear and convincing" evidence disproves any threat to the public if granted parole.

[1] Petitioner adopts and incorporates hereto, as if fully stated herein, Ground 1's #'s [1], [2], [4], [5], [6], [7], [8], [9], [10], [11], [12], [13], [14], [15], [16], [17], [18], [19], [20], [22], [24], [25], [26], [27], [29], [30], [31], [32], [33]

[2] The Orange County Superior Court did not hold any evidentiary hearing, before making findings of fact.

[3] The Fourth District Court of Appeal held no evidentiary hearing before issuing its 1 line summary denial.

[4] The California Supreme Court, before denying review did not hold an evidentiary hearing.

[5] The "clear and convincing" evidence disproves the BPH's use of the following to establish parole unsuitability:

• THE COMMITMENT OFFENSE : BECAUSE THERE WERE NO MORE ACTS RELATED TO THE 2nd Deg. Murder to be more than the minimum necessary to convict and time has lapsed so as to cause the crime itself to no longer have valid evidentiary weight

AMENDMENT / SUPPLEMENT

37 of 92

1  [4 cont.]

2  • PRIOR ADDICTION              8 BECAUSE THERE IS NO POST-CRIME
3                                   EVIDENCE THAT THIS IS LEGALLY OR
                                   FACTUALLY A REASON FOR PAROLE.
4

5  • PROGRAM (MORE SELF-HELP/
         THERAPY     )          8 THE RECORD BEFORE THE BOARD IS
6                                  DEVOID OF ANY EVIDENCE THAT
7                                  MORE SELF-HELP/THERAPY IS
                                   NEEDED.
8

9

10  • COUNSELING/ADMINISTRATIVE
           / DISCIPLINARY        8 THE CDC 128(a) is a custodial
11                                 counseling chrono. Also, the
                                   screwdriver was an administrative
12                                 disciplinary. Neither was a
13                                 "unsuitability circumstance".

14  • PAROLE PLANS               8 THE FACTS SHOW, DUE TO DISABILITY,
15                                 INCOME WILL BE FROM BENEFITS
                                   AND REALISTIC PLANS EXISTED
16                                 TO LIVE WITH WIFE.

17

18  • D/A'S OPPOSITION           8 THE UNDISPUTABLE FACTS ARE
19                                 THAT THE D/A'S OPPOSITION IS
                                   NOT A GROUND FOR UNSUITABILITY.
20

21  • MOTIVE                     8 JEALOUSY/RAGE ARE NOT TRIVIAL
22                                 REASONS PEOPLE MURDER OTHERS.

23  • SELF STUDY ON RAGE         : COULD HAVE BEEN MADE A
24                                 SPECIAL REQUIREMENT OF
                                   PAROLE, AND SHOULDN'T TAKE 2 YEARS
25                                 IF PRISON HAD RESOURCE(S) TO
26                                 PROVIDE IN PAST

27              AMENDMENT/SUPPLEMENT
28                   38 of 42

MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

["unreasonable determination of the facts in light of evidence"]

Petitioner is also entitled to 28 USC § 2254 relief under #(d)(2) when the facts prove that the state courts analysis was "an unreasonable determination of the facts in light of the evidence presented" because "clear and convincing" evidence disproves the courts analysis.

Taylor - v - Maddox (9TH Cir. 2004) 366 F.3d 992 has guided in the above analysis under both 28 USC §§ 2254(d)(2), 2254(e)(1). Taylor, at pp. 999-1000 has held:

"The First provision — the "unreasonable determination" clause — applies most readily to situations where petitioner challenges the state court's Findings based entirely on the state record. Such a challenge may be based on the claim that the Finding is unsupported by sufficient evidence, [cites omitted], that the process employed by the state court was defective, [cites omitted], or that no finding was made by the state court at all [G]"

Because the state only issued one reasoned opinion (i.e. Superior Court) followed by two summary denials (i.e. the Appellate Court and Supreme Court) the "look-through" doctrine of Ylst -v- Nunnemaker (1991) 501 US 797, 803, 111 S.Ct. 2590, 115 L. Ed. 2d. 706 Applies. Based on the facts and comparison to the only reasoned opinion : it should be evident that the so called "reasoned opinion" avoided many of the facts alleged.

TAYLOR, supra, at pp. 1001:
"If for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an "unreasonable determination" of the facts.

AMENDMENT / SUPPLEMENT
39 f 42

1  MEMORANDUM OF POINTS AND AUTHORITIES CONTINUED

2  Here, it is clearly evident that the state court made
3  evidentiary findings without the required evidentiary
4  hearing.

5  Further, as alleged in the facts aforementioned, the facts
6  used to deny parole were not adequate and prove the state-
7  court was in error. The error is so biased that no deference
8  can be payed to those findings.

9  Regarding deference, Pauley -v- Bethenergy Mines, Inc. (1991) 111 S.Ct.
10  2524, 501 US 681 has held:

11  "As a general matter, of course, the case for judicial
   deference is less compelling with respect to
12  agency positions that are inconsistent with previously
   held views."

13

14  Put another way, Burlington Truck Lines -v- United States (1962)
15  371 US 156, 168, 83 S.Ct 239, 245-246, 9 L.Ed 2d 207, 216 has held:

16  "[A] simple but fundamental rule of administrative
   law ... is ... that a reviewing court, in dealing
17  with a determination or judgement which an
   administrative agency alone is authorized to make,
18  must judge the propriety of such action solely by
19  the grounds invoked by the agency. If those grounds
   are inadequate or improper, the court is powerless
20  to affirm the administrative action." [Emphasis Added]

21

22  This Court, as well as any court, should keep in mind
23  that the parole board's actions identifying evidence must
24  support that there is not just a risk to society, but an
25  "unreasonable risk" if parole were to occur. Under the
26  14TH Amend's "Due Process" clause, there are no facts to deny parole.

27  AMENDMENT/SUPPLEMENT

28  40 of 42

<u>CONCLUSION</u>

Based on the aforementioned facts and authorities, Habeas Corpus relief is proper under the 28USC§2254 (d)(1) and 28USC§2254(d)(2) standards of review.

Petitioner has established prima facie case for relief because he has established how the state court rulings were "contrary to"/"unreasonable application of the <u>Superintendent - v - Hill</u> (1985) 472 US 445, 105 S.Ct. 2768 "some evidence" test as well as having substantiated how the state court orders were also "an unreasonable determination of the facts in light of the evidence presented" - 28USC§2254 (d)(2) - as the "clear and convincing" evidence entirely fails to prove there would be an <u>"unreasonable risk of danger to society"</u>. - CCR§2402(a).

The evidence (e.g. Psych Report) and the law belie the Board's disingenuous regard for the 2nd Degree plea bargain, and culpability allegedly associated therewith. At <u>no time</u> did the Board ever allege that more than the minimum existed to convict for 2nd Degree Murder.

Here, where the Board did recognize some of the suitability circumstances, the Calif. Judiciary's determination that "tools" were needed to deal with "race" is a state created smokescreen to deprive Petitioner his 14TH Amendment liberty interest in parole suitability: under <u>due process</u>.

///
///
///

AMENDMENT/SUPPLEMENT
<u>41 of 42</u>

PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays this Court to:

(1) Issue the Writ of Habeas Corpus;

(2) Issue an Order to Show Cause and Appoint Counsel as other inmate help is random and sporatic;

(3) Order an Evidentiary Hearing because the state refused to hold an evidentiary hearing;

(4) Declare Petitioner's rights to "Due Process" under the 14th Amendment violated by the Parole Board and Calif. Judiciary;

(5) Vacate the Parole Boards Findings of Fact and order them to comply with due process.

(6) Vacate the State courts' Findings of Fact and law; &

(7) Grant any other relief deemed proper and in the interest of justice.

Respectfully submitted,

7 / 26 / 2007

WILLIAM BRADSHAW
IN PRO PER

AMENDMENT/SUPPLEMENT
92 of 92

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
#### (C.C.P. §§ 1013(A), 2015,5)

I, _PAUL HEBBE_____, declare:

I am over 18 years of age and I am (NOT) party to this action. I am a

resident of CORRECTIONAL TRAINING FACILITY prison, in the County

of Monterrey, State of California. My prison address is:

_PAUL HEBBE_____, CDCR #: P-04364
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: GW-343-up
SOLEDAD, CA 93960-0689.

On _JULY 26, 2007_____, I served the attached:

RE8 Petition For Writ of Habeas Corpus By A Person In State Custody
28USC / Amendment-Supplement In Support Thereof /
Lodgements (Seperately Attached)

on the parties herein by placing true and correct copies

thereof, enclosed in a sealed envelope (verified by prison

staff), with postage thereon fully paid, in the United States

Mail in a deposit box so provided at the above-named institution

in which I am presently confined. The envelope was addressed as

follows:

ORIGINAL + 2 COPIES                          — COPY —

ATTN: CLERK OF THE COURT          Edmund G. Brown Jr., Attorney General, et al
UNITED STATES DISTRICT COURT      c/o Office of the Attorney General
CENTRAL DISTRICT OF CALIFORNIA    P.O. Box 85266
United States Courthouse          San Diego, CA
ATTN: Intake/Docket Section                    91286-5266
312 North Spring Street
Los Angeles, California
                90012

I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Executed on _26 JULY 2007_ .

_Paul E. Hebbe_____

Declarant

—LAST—

```
1 | WILLIAM BRADSHAW (D-73217)
2 | P.O. BOX 689, CTF-CENTRAL
  | GW-325-LOW
3 | SOLEDAD, CA  93960-0689
  |   (IN PRO PER)
4 |
5 |
6 |
7 |
8 |          IN   THE   UNITED   STATES   DISTRICT   COURT
9 |      FOR   THE   CENTRAL   DISTRICT   OF   CALIFORNIA
10 |
11 |
12 |
13 | WILLIAM BRADSHAW                  |
   |    (PETITIONER)                   |
14 |                                   |  CASE NO.
15 |          -V-                      |  RE: "LODGEMENTS IN SUPPORT
16 | B. CURRY, WARDEN(A), et al        |     OF 28 USC §2254
   |    (RESPONDENT(S))                |     SIMULTANEOUSLY  FILED
17 |                                   |     7 /26 /2007
18 |                    LODGEMENTS
19 | I  8 2006 PAROLE HEARING DECISION TRANSCRIPTS
20 | II  8 SUPERIOR COURT ORDER
21 | III 8 APPELLATE COURT ORDER
22 | IV  8 CAL. SUPREME COURT PETITION FOR REVIEW
23 | V  8 CAL. SUPREME COURT ORDER DENYING RELIEF
24 | VI 8 PSYCH REPORT
25 |
26 | 7 /26 /2007                   _____
27 |                                WILLIAM BRADSHAW
                                    IN PRO PER
28 | ///
```

# LODGEMENT I

Board of Parole Hearings Decision To Deny Parole

LODGEMENT I

78

1                  CALIFORNIA BOARD OF PAROLE HEARINGS

2                      D E C I S I O N

3                  DEPUTY COMMISSIONER FILANGERI:  We're on

4      record.

5                  PRESIDING COMMISSIONER BRYSON:  The time

6      is 1647 in the matter of William Bradshaw.  Sir,

7      the Panel reviewed all information received from

8      the public and relied on the following

9      circumstances in concluding that you are not

10     suitable for parole and would pose an

11     unreasonable risk of danger to society or a

12     threat to public safety if released from prison.

13     The offense was carried out in an especially

14     cruel and callous manner in that you shot your

15     vulnerable, estranged wife in the chest and

16     knee.  And she died due to gunshot wounds to the

17     chest and injuries to the head where you hit her

18     as she lay dying on the bed.  The offense was

19     carried out in a dispassionate and calculated

20     manner in that after reportedly telephoning and

21     threatening the life of Robert Parsons you went

22     to the victim's residence armed.  The offense

23     was carried out in a manner demonstrating

24     exceptionally callous disregard for human

25     suffering and you had previously ransacked your

26     victim's home thereby instilling fear and terror

27     WILLIAM BRADSHAW  D-73217  DECISION PAGE 1  2/8/06

79

1    in her.  Public safety was at risk.  And you had
2    a clear opportunity to cease but you continued.
3    Sir, you have no record, prior record of
4    violence or criminality.  However, you do have a
5    record of alcohol and poly-substance abuse to
6    which you have readily admitted.  As to your
7    institutional behavior.  You have programmed
8    within -- I would say in a limited manner within
9    the disability restraints that have been placed
10   on you.  You've been prevented from full work
11   participation during your incarceration due to
12   your disability.  However, you're to be
13   commended for the community college work that
14   you have done.  And you have done vocational
15   work in sewing machines and appliance repair.
16   You also have participated in AA, NA, Anger
17   Management courses and you do have a relatively
18   disciplinary-free misconduct record.  You do,
19   however, have one 115, 2004, for possession of
20   contraband, and one 128(a), that was in 1994 for
21   smoking.  As to the psychological report dated
22   December 29, 2005 by Dr. Macomber, it was
23   generally supportive of release.  As to your
24   parole plans, you have what this Board considers
25   questionable parole plans for residence in your
26   last county -- excuse me -- in California.  That
27   **WILLIAM BRADSHAW  D-73217  DECISION PAGE 2  2/8/06**

80

1   would be with your new wife, Elizabeth Bradshaw
2   in Anaheim.   Questionable because the two of you
3   have never lived together.   Are they realistic?
4   I don't know.   But we did discuss with you
5   alternatives.   And you have thought through
6   alternatives.   So that is -- you're to be
7   commended for that and you do have that
8   possibility in your mind.   As to employment
9   plans, obviously you are unable to work so you
10  would be depending upon disability payments,
11  which you have assured us -- and your wife also
12  assures us -- is in progress such that you would
13  be in receipt of disability upon parole.   Penal
14  Code 3042 responses indicate opposition to --
15  finding of parole suitability, specifically by
16  the District Attorney of Orange County.   In a
17  separate decision, the hearing Panel finds that
18  it is not reasonable to expect that parole would
19  be granted at a hearing during the following two
20  years.   Specific reasons for this finding are as
21  follows.   The Panel reviewed all information
22  received from the public and we're relying on
23  the following circumstances.   The offense was
24  carried out in an especially cruel and callous
25  manner in that you shot your vulnerable,
26  estranged wife in the chest and knee.   And she
27  WILLIAM BRADSHAW  D-73217  DECISION PAGE 3  2/8/06

81

1   died due to gunshot wounds and to chest injuries
2   to her head where you hit her as she lay dying
3   on the bed.  The offense was carried out in a
4   dispassionate and calculated manner in that
5   after reportedly telephoning and threatening the
6   life of Robert Parsons you went to the victim's
7   residence armed.  The offense was carried out in
8   a manner demonstrating exceptionally callous
9   disregard for human suffering in that you had
10  previously ransacked your victim's home thereby
11  instilling fear and terror in her.  There was
12  also considerable risk to public safety in that
13  others could have been injured or killed.  Also,
14  you had clear opportunity to cease but you
15  continued your actions.  Moreover, the motive
16  for the crime was very trivial in relation to
17  the offense in that it was jealousy and by your
18  own testimony you said I couldn't let her go.
19  In denying you parole for two years will place
20  you on the 2008 calendar for your next
21  subsequent hearing.  If this decision is final,
22  you will not get paroled.  The Board will send
23  you a copy of the decision.  It will indicate
24  the reasons you did not get paroled.  If this
25  decision is not final, the Board will set up
26  another hearing.  You can read the laws about
27  WILLIAM BRADSHAW  D-73217  DECISION PAGE 4  2/8/06

82

1    your hearing at California Code of Regulations

2    Title 15, section 2041.  The Board recommends no

3    more 115's or 128(a)'s, get self-help and get

4    therapy as it's available.  And additionally,

5    develop self-help techniques to assist you in

6    dealing with the consequences of this grave

7    offense.  Continue reaching out to help others.

8    Sir, when self-help is not available in terms of

9    programs, you can read.  I'm sure you do read.

10   And you can make book reports to this Panel.

11   And sir, our concern is that you chose a method

12   in this crime that is not really age dependent.

13   And our concern is that we see before us a man

14   who has somewhat accepted and is on the road to

15   accepting what you have done.  And I understand

16   that it's -- it's clear that it's very damaging

17   to you.  In order for you to not be a risk, we

18   need to see that you are strong enough, that the

19   next stressful situation that could occur will

20   not break you down and have something terrible

21   occur as a result in terms of public safety.

22   That is the concern.  So we feel that you would

23   benefit from further time here.  Basically to

24   get yourself together and get a grip and feel

25   that you are not the center of your universe

26   anymore because of your ability to reach out, to

27   **WILLIAM BRADSHAW  D-73217  DECISION PAGE 5  2/8/06**

83

1   actually not make it not all about you.  But
2   reaching out to assist others and making that
3   the focus of your life so that you can move on
4   we feel will be a much healthier, much more risk
5   free environment in which to move you out into
6   the civilized world again.  Commissioner, do you
7   have any further --

8        **DEPUTY COMMISSIONER FILANGERI:**  Yeah.
9   Thanks.  You know, until this Panel believes
10  your release wouldn't amount to an unreasonable
11  risk to public safety, you can't be granted a
12  date.  And I got to tell you that there's plenty
13  of opportunities for you to suffer rage on
14  release.  There's more opportunities today.  I
15  don't know if you've heard of road rage and all
16  the sorts of things that's going on from the
17  stressful situations in our communities today.
18  There's more opportunities today than there were
19  then.  You don't just have to pull a trigger to
20  be a danger to public safety.  So what we're
21  concerned with is how many tools -- what tools
22  do you have to deal with this rage.  Because
23  we're primarily concerned -- is how much -- how
24  much risk would you be to public safety.  Well
25  one thing we could do is we could wait until you
26  become harmless because you're too old to be a
27  WILLIAM BRADSHAW  D-73217  DECISION PAGE 6  2/8/06

84

1    risk.  We don't want to do that.  That could

2    take a long time.  Another way we could do -- is

3    wait for you to program to the point that you're

4    no longer a risk.  Truth is, I don't think CDC

5    has the programs available for that.  And you're

6    liable to end up becoming too old to be a risk

7    if you wait for them to give you the programs.

8    I mean they're focusing their treatment on

9    psychotics and stuff like that, mentally ill

10   people, people that are -- that need this kind

11   of help.  I'm afraid there's not much

12   opportunity for you.  So what we're going to

13   suggest you do is study.  I think you should try

14   to make some sort of appointment with one of the

15   psychologists here, take it as an assignment

16   from us that you want to study about rage.  And

17   if he'll go for it, I'm not sure that this is

18   the institution that's doing that, some of the

19   psychologists will let you write reports about

20   what -- about the books -- the books you could

21   read on this that they would direct you toward.

22   Now, one of the things that went into our

23   decision about the two year denial, we've got --

24   we've got sufficient reason for a two-year

25   denial, but I want you to know that there was

26   one thing that we thought about was this hearing

27   WILLIAM BRADSHAW  D-73217  DECISION PAGE 7  2/8/06

85

1  was pretty stressful for you, I know.  And we

2  didn't want to put you through this kind of

3  stress year after year after year without making

4  any progress.  What we're asking you to do is

5  make a lot of progress and you probably couldn't

6  do that in a year if you started today.  So we

7  think the two year denial is in a way better for

8  you.  Because you won't have to be back here one

9  year before -- we know you're going -- you're

10  not going to be prepared.  Whereas in two years

11  there's a real chance, I'm not making any

12  promises, but there's a real chance you'll be

13  more favorably considered if you do what we say.

14  I truly do want to wish you the best of luck.

15  Thank you.

16          PRESIDING COMMISSIONER BRYSON:  I do too.

17  Good luck.

18          INMATE BRADSHAW:  Thank you.

19          PRESIDING COMMISSIONER BRYSON:  And the

20  time -- This concludes the hearing.  And the

21  time is 1653.

22                    --oOo--

23  PAROLE DENIED TWO YEARS

                                      JUN  8 2006
24  THIS DECISION WILL BE FINAL ON _____

25  YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

26  DATE, THE DECISION IS MODIFIED.

27  WILLIAM BRADSHAW  D-73217  DECISION PAGE 8  2/8/06

86

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, Marsha Mees, a duly designated
transcriber, PETERS SHORTHAND REPORTING, do hereby
declare and certify under penalty of perjury that
I have transcribed tape(s) which total one in
number and cover a total of pages numbered 1 - 85,
and which recording was duly recorded at
CORRECTIONAL TRAINING FACILITY, at SOLEDAD,
CALIFORNIA, in the matter of the SUBSEQUENT PAROLE
CONSIDERATION HEARING of WILLIAM BRADSHAW,
CDC No. D-73217 on FEBRUARY 8, 2006, and that the
foregoing pages constitute a true, complete, and
accurate transcription of the aforementioned
tape(s) to the best of my ability.

I hereby certify that I am a disinterested
party in the above-captioned matter and have no
interest in the outcome of the hearing.

Dated February 24, 2006 at Sacramento
County, California.

Marsha Mees
Transcriber
**PETERS SHORTHAND REPORTING**

# LODGEMENT  II

ORANGE COUNTY SUPERIOR COURT ORDER (i.e.
REASONED OPINION DENYING RELIEF

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE

# MINUTE ORDER

Case Number   M-10957 X A

**People Vs Bradshaw, William**

| ┌─ Report Request Criteria ─────────────────────── |
|---|
| 1. Docket Date Range      : Date filter |
| 2. Sequnce Number Range : Sequence filter |
| 3. Docket Category        : Category filter |

| Docket Dt | Seq | Text |
|---|---|---|
| 8/18/2006 | 1 | **Hearing held on 08/18/2006 at 09:00 AM in Department C5 for Chambers Work.** |
| | 2 | Officiating Judge: Robert R. Fitzgerald, Judge |
| | 3 | Clerk: L. Torres |
| | 4 | No Court Reporter present at proceedings. |
| | 5 | No appearances |
| | 6 | Order denying Writ of Habeas Corpus filed. |
| | 7 | Petition for Writ of Habeas Corpus is denied for the reasons stated in the order denying writ filed 07/25/2006. |
| | 8 | As ordered, the clerk this date has mailed a copy of this minute order to the Petitioner at<br>WILLIAM BRADSHAW<br>CDC #D-73217<br>GW-325L<br>CORRECTIONAL TRAINING FACILITY<br>P.O. BOX 689<br>SOLEDAD, CA 93960-0689. |
| | 9 | The clerk this date has forwarded a copy of this minute order to Orange County District Attorney's Office. |

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

AUG 1 8 2006

ALAN SLATER, Clerk of the Court

BY: _____, DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF ORANGE

In re

**WILLIAM BRADSHAW,**

    Petitioner,

    ON HABEAS CORPUS.

CASE NO. **M-10957**

**ORDER**

TO THE PETITIONER AND THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, HAVING RECEIVED THE PETITION FOR WRIT OF HABEAS CORPUS, THE COURT FINDS AND ORDERS AS FOLLOWS:

I

In 1987, Petitioner entered a guilty plea to second degree murder with use of a firearm and was sentenced to 17 years to life. He became eligible for parole in 1998. He has had four previous parole hearings. At his third and fourth hearings, in 2003 and 2004 respectively, parole was denied for one year. Petitioner's fifth subsequent parole hearing took place in February 2006. Parole was denied for two years.

The Board of Parole Hearings (hereafter individually and collectively referred to as "the BPH") found Petitioner would pose an unreasonable risk of danger to society or a threat to public safety at this time if he were released. In announcing its decision, the BPH stated it relied on the "following circumstances." It then recited the facts of Petitioner's commitment offense. Petitioner discovered his estranged wife was having an affair. Petitioner telephoned her and told

1

her he was coming to her residence to kill the man she was involved with. When Petitioner arrived at the residence, however, the man was not there. Petitioner fired the gun at his estranged wife twice and then hit her in the head with the gun. She sustained bullet wounds to the knee and the chest, as well as head injuries. She died from the chest wound and the head injuries. Petitioner turned himself in to police shortly after the crime. At his parole hearing, Petitioner admitted all responsibility for his crime and expressed remorse.

Petitioner was virtually a model prisoner. The BPH acknowledged Petitioner's prison conduct was "relatively disciplinary-free" and commended him for his educational and vocational work. Petitioner had also participated in AA, NA, and Anger Management programs. The BPH was not entirely satisfied with Petitioner's parole plans, describing them as "questionable" because Petitioner had remarried while in prison and had never actually lived with his present wife. The BPH stated that Petitioner's psychological report was "generally supportive of release." Nevertheless, the BPH concluded it would not grant parole, and moreover it was not reasonable to expect parole to be granted for two years. The BPH denied parole for two years.

The BPH told Petitioner its "concern is that we see before us a man who has somewhat accepted and is on the road to accepting what you have done. . . . In order for you to not be a risk we need to see that you are strong enough, that the next stressful situation that could occur will not break you down and have something terrible occur as a result in terms of public safety. That is the concern. So we feel that you would benefit from further time here."

It continued, "You know, until this Panel believes your release wouldn't amount to an unreasonable risk to public safety, you can't be granted a date. And I got [sic] to tell you that there's [sic] plenty of opportunities for you to suffer rage on release. There's [sic] more opportunities today. I don't know if you've heard of road rage and all the sorts of things that's [sic] going on from the stressful situations in our communities today. There's [sic] more opportunities today than there were then. You don't just have to pull a trigger to be a danger to public safety. So what we're concerned with is how many tools -- what tools do you have to deal with this rage. Because we're primarily concerned -- is how much -- how much risk would you be to public safety. . . ."

2

The BPH then voiced its opinion the prison system probably did not have the specific programs available that Petitioner needed, because Petitioner did not have an ongoing problem with drugs or alcohol, nor was he psychotic or mentally ill. Rather, the BPH suggested to Petitioner he would need to read and study on his own or perhaps with the help of the prison psychologist, to understand and cope with rage.

The BPH concluded its comments explaining, "Now, one of the things that went into our decision about the two-year denial . . . What we're asking you to do is make a lot of progress and you probably couldn't do that in a year if you started today. So we think the two-year denial is in a way better for you. Because you won't have to be back here one year before . . . you're not going to be prepared. Whereas in two years there's a real chance . . . ."

II

Petitioner lists multiple grounds for relief. He argues his plea agreement was rendered "constitutionally invalid" when the BPH "illegally withheld his reciprocal benefit of lessened punishment for the fifth time." He states the BPH defined his offense as more serious than the crime to which he pleaded guilty. He contends the BPH violated his liberty interest in parole and his due process rights under the state and federal constitutions. Petitioner also argues the particular District Attorney (DA) who appeared at the hearing objects to all paroles, and so BPH reliance on the DA objection is an abuse of discretion. Petitioner contends the BPH acted arbitrarily and capriciously when it relied on its incorrect characterization of his parole plans as "questionable." He states the BPH routinely ignores the expert evidence of mental health department professionals. Petitioner also argues the BPH violated his due process rights by relying on the unchanging circumstances of the commitment offense and ignoring evidence of his rehabilitation. Petitioner contends the two-year denial was arbitrary and violated due process. Finally, Petitioner states the BPH illegally applies a no-parole policy to term-to-life prisoners.

III

The BPH may deny parole if it determines the gravity of the commitment offense is such that consideration of public safety requires more incarceration. (Pen. Code, § 3041, subd. (b); *In re Dannenberg* (2005) 34 Cal.4th 1061, 1070-1071 [BPH "may protect public safety" by

3

"considering the dangerous implications" of the commitment offense].) Thus, while the BPH must point to factors "beyond the minimum elements of the crime . . . it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." (*In re Dannenberg, supra*, at p. 1071.) In other words, if the BPH determines the gravity of the commitment offense "is such that consideration of the public safety requires a more lengthy period of incarceration," it may deny parole without proceeding to consider and analyze the other suitability factors such as prison behavior and parole plans. (*Ibid.*)

That is precisely what occurred here. The BPH verbalized that its concern was "the next stressful situation that could occur" and stated it could not grant Petitioner a parole date until it believed his release would not present an unreasonable risk to public safety. It then expressed that there are many opportunities for rage to occur in our communities today. It wanted Petitioner to have the tools he needed to deal with rage, because its primary concern was "how much risk [he] would be to public safety."

In denying parole for two years, the BPH mentioned Petitioner's parole plans, but it relied on its belief that Petitioner would present an unreasonable risk to public safety if released immediately. Likewise, in announcing a two-year denial, the BPH explained to Petitioner that the prison system probably could not offer him the program he needed and he would have to undertake a particular self-study. It estimated the self-study would take two years. To return for an earlier parole hearing would be a stress and would result in frustration.

Thus the BPH's two-year denial was supported by the circumstances of the commitment offense and by its particular instructions to Petitioner. The BPH therefore acted lawfully and did not violate constitutional or statutory law in reaching its decision. (Pen. Code, § 3041, subd. (b); *In re Dannenberg* (2005) 34 Cal.4th 1061, 1070-1071.) The petition is denied on that basis. (*Ibid.*)

## IV

The petition for a writ of habeas corpus is DENIED.

DATED: 8-18-06

JUDGE OF THE SUPERIOR COURT

4

# LODGEMENT III

COURT OF APPEALS ORDER DENYING RELIEF

LODGEMENT III

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

COURT OF APPEAL 4TH DIST DIV 3
FILED

NOV 3 0 2006

Deputy Clerk _____

| In re WILLIAM BRADSHAW<br><br>on Habeas Corpus. | G037697<br><br>(Super. Ct. No. M10957)<br><br>ORDER |
| --- | --- |

THE COURT:*

The petition for a writ of habeas corpus is DENIED.

**ARONSON, J.**

_____

ARONSON, ACTING P. J.

\* Before Aronson, Acting P. J., Fybel, J., and Ikola, J.

# LODGEMENT IV

SUPREME COURT (STATE) PETITION FOR REVIEW

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In re WILLIAM BRADSHAW                )   Case No. _____
                                      )
                                      )
On Habeas Corpus                      )
                                      )
                                      )
_____ )

## PETITION FOR REVIEW

After the Decision by the Court of Appeal
Fourth Appellate District, Division 3
Case No. G037697 filed October 6, 2006
Denied November 30, 2006.

WILLIAM BRADSHAW D-73217
PETITIONER IN PRO PER
P.O. BOX 689
SOLEDAD, CA   93960-0689

# TABLE OF CONTENTS

PAGE

COVER PAGE

TABLE OF CONTENTS                                                       i

TABLE OF AUTHORITIES                                                ii-iv

PETITION FOR REVIEW                                                     1

QUESTIONS PRESENTED                                                   1-2

NECESSITY FOR REVIEW                                                   3

INTRODUCTION                                                           4

ARGUMENT I -- CONTRARY & UNREASONABLE                               5-14

THE BOARD DEPRIVED PETITIONER OF HIS LIBERTY INTEREST IN PAROLE AND VIOLATED HIS STATE AND FEDERAL DUE PROCESS RIGHTS BY REPEATEDLY DENYING HIM PAROLE BASED ON THE UNCHANGING CIRCUMSTANCES OF THE OFFENSE AND IGNORING HIS PLEA BARGAIN, THE EVIDENCE OF HIS REHABILITATION, PROGRAMMING AND EXEMPLARY POST CONVICTION BEHAVIOR. THE ORANGE COUNTY SUPERIOR COURT'S DECISION UPHOLDING THE BOARD'S DENIAL IS BOTH "CONTRARY TO" AND AN "UNREASONABLE APPLICATION OF" U.S. SUPREME COURT PRECEDENT.

ARGUMENT II -- RIGHT TO REDRESS OF GRIEVANCES                      14-17

THE SUPERIOR COURT OF ORANGE COUNTY AND THE FOURTH DISTRICT APPELLATE COURT VIOLATED PETITIONER'S FIRST AMENDMENT RIGHT UNDER THE U.S. CONSTITUTION TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES AS APPLICABLE THROUGH THE "DUE PROCESS CLAUSE" OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION BECAUSE THE COURT DISREGARDED GROUNDS WHICH INTERFERED WITH HIS RIGHT TO BE HEARD UNDER PROCEDURAL DUE PROCESS IDENTIFIED IN FUENTES v. SHEVIN (1972) 407 U.S. 67, 32 L.Ed.2d 556, 92 S.Ct. 1983; THEREFORE BEING A MISCARRIAGE OF JUSTICE.

CONCLUSION                                                          17-18

EXHIBIT 'A' APPELLATE COURT DENIAL                                  19-20

PROOF OF SERVICE                                                       21

TABLE OF AUTHORITIES

AUTHORITY                                                    PAGE

CONSTITUTIONAL AUTHORITIES

U.S. CONSTITUTION AMENDMENT 1                                14,15

U.S. CONSTITUTION AMENDMENTS 5 & 14                          passim

CALIFORNIA CONSTITUTION ARTICLE I, §§ 7 & 15                 passim

CALIFORNIA CONSTITUTION ARTICLE VI, § 10                     16

FEDERAL CASE LAW

ARMSTRONG v. DAVIS (9th Cir. 2001)                           15
    2005 WL 2219220

BAIR v. FOLSOM PRISON (E.D.Cal. 2005)                        10
    2005 WL 2219220

BIGGS v. TERHUNE (9th Cir. 2003)                             passim
    334 F.3d 910

BLAKELY v. WASHINGTON (2004)                                 3,4
    124 S.Ct. 2531

BRADLEY v. HALL (9th Cir. 1995)                              14
    64 F.3d 1276

ELROD v. BURNS (1976)                                        16
    472 U.S. 347

FUENTES v. SHEVIN (1972)                                     14,15,17
    407 U.S. 67

IRONS v. WARDEN (E.D.Cal. 2005)                              10,12-13
    358 F.Supp.2d 936

JANCSEK v. OREGON BD. OF PAROLE                              5
    833 F.2d 1389

JOHNSON v. FINN (E.D.Cal. 2006)                              12
    2006 WL 195159

McQUILLION v. DUNCAN (9th Cir. 2002)                         5,13,15
    334 F.3d 895

ROSENKRANTZ v. MARSHALL (C.D.Cal. 2006)                      3,11,12
    444 F.Supp.2d 1063

SAIF' ULLAH (2005)                                           13
    2005 WL 155389

TABLE OF AUTHORITIES CONTINUED

AUTHORITY                                                    PAGE

FEDERAL CASE LAW CONTINUED

SANCHEZ v. KANE (C.D.Cal. 2006)                              3
    444 F.Supp.2d 1049

SUPERINTENDENT v. HILL (1985)                                passim
    472 U.S. 445

TAYLOR v. MADDOX                                             13
    363 F.3d 992

WILLIAMS v. TAYLOR (2000)                                    17
    120 S.Ct. 1495

STATE CASE LAW

In re DANNENBERG (2005)                                      8
    34 Cal.4th 1061

In re JEFFREY ELKINS (2006)                                  1,3
    2006 DJDAR 14489

In re WEN LEE (2006)                                         1,3
    2006 DJDAR 13961

In re RAMIREZ (2002)                                         3,8,9
    94 Cal.App.4th 549

In re ROSENKRANTZ                                            8
    80 Cal.App.4th 409

In re ROSENKRANTZ (2002)                                     3
    29 Cal.4th 616

In re ROSENKRANTZ (2006)                                     1,3,10
    Los Angeles County Superior BH003529

In re SCOTT (2004)                                           11,12
    133 Cal.App.4th 595

In re SHAPUTIS (2006)                                        12
    135 Cal.App.4th 231

STATE STATUTES

Penal Code § 190                                             8,9

Penal Code § 1192.1                                          8

Penal Code § 1192.5                                          8

TABLE OF AUTHORITIES CONTINUED

AUTHORITY                                                              PAGE

STATE STATUTES CONTINUED

Penal Code § 1473                                                        14

Penal Code § 3000(b)(1)                                                   9

Penal Code § 3041(a)                                                      9

CALIFORNIA CODE OF REGULATIONS

CCR § 2402                                                                6

CCR § 2404                                                               14

1           IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

2

3    In re WILLIAM BRADSHAW    )   Case No. _____

4                       )       Criminal  C-62913

5    On Habeas Corpus       )   Orange County Superior Court
                       )      Case No. _M-10957

6                       )
                       )   Fourth District Appellate Court

7    _____)   Division 3 Case No. _G037697

8    TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE
ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

9

10                      PETITION FOR REVIEW

11    Petitioner petitions this court for review following the decision of

12    the Court of Appeal, Fourth Appellate District, Division 3, filed in that

13    Court October 6, 2006. A copy of the opinion of the Court of Appeal is

14    attached as Exhibit 'A'.

15                     QUESTIONS PRESENTED

16    1.  In light of the recent decisions upheld/handed down by this Court in

17       Rosenkrantz (Los Angeles County Superior Court Case No. BH003529, June

18       26, 2006, Second District Appellate Court 7/31/006, California Supreme

19       Court 8/03/06), Wen Lee (DJDAR 2006 13961) and Jeffrey Elkins 2006

20       DJDAR 14489), is the Board of Parole Hearings (BPH) violating

21       Petitioner's state and federal due process protections by denying him

22       parole for the fifth time based on the unchanging circumstances of

23       his offense after more than 20 years of model behavior and

24       rehabilitation exhibited during his incarceration.

25    2.  Does the BPH violate Petitioner's Plea Bargain by recharacterizing

26       his offense as one carrying a more severe penalty than that to which

27       he pled and the state agreed?

28

3.  Is the BPH violating Petitioner's State and Federal Due Process by deny him parole based on factors that clearly amount to Circumstances Tending to Show Suitability according to their own regulations?

4.  Is the BPH violating Petitioner's State and Federal Due Process by relying on allegations made by the District Attorney's office that were never proven to be true or pled to by Petitioner?

5.  Is the BPH violating Petitioner's State and Federal Due Process by requiring him to have parole plans in excess of that required by their own regulations?

6.  Is the BPH violating Petitioner's State and Federal Due Process by ignoring the Expert Witness Testimony in the Psychological Evaluation and substituting their won unqualified opinion and ordering therapy in violation of their own regulations?

7.  Is the BPH exhibiting contempt of court when imposing a multi-year denial to Petitioner when his previous two hearings only resulted in a one year denial and there was no legitimate reason for the multi-year denial other than the BPH's illegal order for self-therapy?

8.  Is the BPH relying on a sub rosa No/Anti or Under-Inclusion Parole Policy for all Term-To-Life-Prisoners (TTLP) when they continue to deny more than 90% of all those appearing at hearings based on the "Exceptional" gravity of their offenses regardless of the degree or circumstances?

9.  Are the State Courts denying Petitioner his First Amendment rights under the U.S. Constitution to petition the government for redress of grievances when they disregard grounds submitted?

2

1                          NECESSITY FOR REVIEW

2          A grant of review and resolution of these issues by the Court is

3  necessary to secure uniformity of decision and to settle important questions

4  of law. The need for uniformity of decision is demonstrated by a comparison

5  of this case with the factually similar cases of In re Rosenkrantz (2006)

6  Los Angeles County Superior Court Case No. BH003529 decided June 26, 2006

7  and which this Court upheld 8/03/06, In re Wen Lee (DJDAR 2006 13961),

8  In re Jeffery David Elkins (DJDAR 2006 14489), In re Ramirez (2002) 94

9  Cal.App.4th 549 which resulted in court findings opposite to that in

10  Petitioner's case.

11         Petitioner respectfully submits that viewing these cases together

12  demonstrates the lack of uniformity in application of the "some evidence"

13  and "due process" standards and that the decision in the instant case

14  conflicts with the recently announced State "some evidence" and "Due

15  Process" standards in the state cases listed ante, and the Federal "some

16  evidence" and "Due Process" standards delineated in Sanchez v. Kane 444

17  F.Supp.2d 1049 (C.D.Cal. 2006) Rosenkrantz v. Marshall 444 F.Supp.2d 1063

18  (C.D.Cal. 2006), Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, Blakely

19  v. Washington (2004) 124 S.Ct. 2531.

20         This case also provides this Court with an opportunity to refine the

21  meaning of the "particularly egregious" standard found in In re Ramirez,

22  supra, 94 Cal.App.4th 549, and In re Rosenkrantz, supra, 29 Cal.4th 616,

23  and to bring it and other standards such as liberty interest and some

24  evidence into line with noted rulings.

25         Also, this case provides the Court with an opportunity to determine

26  the several other questions presented ante in an effort to clearly define

27  how the Board should employ state statute and its own regulations and when

28  it may defer to its own discretion and set them aside as they have here.

                                      3

1

INTRODUCTION

2  On February 8, 2006 Petitioner appeared before the Board of Parole
3 Hearings for his fifth parole consideration hearing and was found unsuitable
4 and denied parole for two (2) years. Petitioner's MEPD was February 10,
5 1998, eight (8) years before this hearing.

6  Petitioner was contractually convicted by plea agreement of a 15 years
7 to life second degree murder (with a 2 year enhancement for use of a
8 firearm), in Orange County Superior Court (Case No. C-62913) for the murder
9 of his estranged wife. Petitioner admitted and accepted responsibility
10 for his actions at his parole hearing. Since Petitioner was contractually
11 convicted of a 15 years to life second degree murder by plea agreement
12 with the state, all parties, (the state, the executive and the court),
13 must view his criminal conduct solely as a 15 years to life second degree
14 murder WITHOUT SPECIAL CIRCUMSTANCES. Further, the parties are precluded
15 from characterizing his offense and/or criminal conduct as including any
16 action defining it as one with special circumstances such as torture or
17 activities akin to torture, etc.

18  Additionally, the Board may not rely on allegations not found to be
19 true by a trier of fact or otherwise pled as reasons to deny parole (Blakely
20 v. Washington, supra, (2004) 124 S.Ct. 2531.

21  While the Board did not say they were relying SOLELY on the Gravity
22 of the Commitment offense, the other findings mentioned, Need for Self-
23 Help/Therapy, Institutional Behavior, Parole Plans, and Opposition by the
24 District Attorney are baseless, unsupported by the evidence, and/or are
25 NOT circumstances on which a denial of parole may legally be based.

26  Repeatedly relying on the gravity of the offense, an unchanging factor
27 of some 20 years past, denies Petitioner of his Liberty Interest in parole
28 triggering the Due Process Clauses of the State and Federal Constitutions.

4

1

ARGUMENT I

2   THE BOARD DEPRIVED PETITIONER OF HIS LIBERTY INTEREST IN PAROLE
    AND VIOLATED HIS STATE AND FEDERAL DUE PROCESS RIGHTS BY
3   REPEATEDLY DENYING HIM PAROLE BASED ON THE UNCHANGING
    CIRCUMSTANCES OF THE OFFENSE AND IGNORING HIS PLEA BARGAIN,
4   THE EVIDENCE OF HIS REHABILITATION, PROGRAMMING AND EXEMPLARY
    POST CONVICTION BEHAVIOR. THE ORANGE COUNTY SUPERIOR COURT'S
5   DECISION UPHOLDING THE BOARD'S DENIAL IS BOTH "CONTRARY TO"
    AND "AN UNREASONABLE APPLICATION" OF U.S. SUPREME COURT
6   PRECEDENT.

7       For the **FIFTH** time Petitioner appeared before the Board for parole

8   consideration and was denied because of the unchanging circumstances of

9   his offense, institutional behavior, alleged inadequacies of his parole

10  plans, DA opposition and need for more self-help programming.

11          Section 3041 of the California Penal Code creates in every
            inmate a cognizable liberty interest in parole which is
12          protected by the procedural safeguards of the Due Process Clause
            [citations]... [and] the due process protections of the
13          California Constitution. Th[is] liberty interest is created,
            not upon grant of parole, but upon the incarceration of the
14          inmate. (Biggs v. Terhune, supra, (9th Cir. 2003) 334 F.3d
            910, 914-915. cf. McQuillion v. Duncan, (9th Cir. 2002) 306
15          F.3d 895, 903).

16          Therefore, not only must "some evidence" support the [Board's]
            decision... [that] evidence... must have some indicia of
17          reliability. (Biggs v. Terhune, supra, citing McQuillion, supra,
            at 904. See also Jancsek v. Oregon Board of Parole, (9th Cir.
18          1987) 833 F.2d 1389, 1390 [adopting the "some evidence" standard
            set forth by the Supreme Court in Superintendent v. Hill (1985)
19          472 U.S. 445, 456].)

20      In Biggs, a case with situational factors more egregious than

21  Petitioner's and a prison performance record analogous to the one in this

22  case, the Court held that when a prisoner has behaved in a criminal and

23  disciplinary free manner over a long term, a Board finding that he has

24  an escalating pattern of criminal history relying solely on his pre-prison

25  conduct would not satisfy the necessary indicia of reliability and thus

26  would be devoid of evidentiary support (Id at 916). Biggs also held that

27  when a prisoner has engaged in rehabilitation type programming such as

28  self-help groups, vocational and educational courses, etc... for an extended

1  period of time, in Biggs' case over 13 years, during which time he has

2  remained disciplinary free, the Board can not find that his gains are recent

3  because the evidence demonstrates otherwise (Id at 917). Logical analysis

4  and court findings which equally apply to Petitioner's similar prison record

5  and much lower offense degree render VOID the Board's findings that

6  Petitioner is currently a threat to society because of opposition by the

7  DA, 1 non-serious disciplinary infraction, their CONTRADICTORY and

8  UNQUALIFIED assessment of a need for self-help/therapy, and the unchanging

9  circumstances of the offense.

10      The Board's other non-offense related reason for denying Petitioner

11  parole, their conclusion this his parole plans were questionable because

12  "...your parole plans... for residence... with your wife... the two of

13  you have never lived together." exceeded the authority/discretion granted

14  the Board under their own rules, CCR § 2402(d)(8) which only allows the

15  Board to assess whether "[t]he prisoner has made realistic plans for release

16  or has developed marketable job skills that can be put to use upon release."

17  Additionally, no other Board panel has ever found Petitioner's Parole Plans

18  to be inadequate or questionable.

19      The Board has found Petitioner unsuitable for parole in each of his

20  5 parole hearings. Following is a list of their determinations and/or

21  findings.

22  1997 - 2 year denial

23      Commitment Offense
       Unstable Social History
24      Psychological report not totally supportive.

25  1999 - 4 year denial

26      Commitment Offense
       Unstable Social History
27      Need for Self-Help/Therapy
       Opposition by the DA - Escalating Pattern of criminal conduct.

28

1  2003 - 1 year denial

2      Commitment Offense
       Unstable Social History
3      Need for Self-Help/Therapy
       Opposition by the DA & Anaheim P.D.

4
   2004 - 1 year denial
5
       Commitment Offense
6      Unstable Social History
       Need for Self-Help/Therapy
7      Opposition by the DA

8  2006 - 2 year denial

9      Commitment Offense
       Need for Self-Help/Therapy
10     Opposition by the DA
       Institutional Behavior
11     Parole Plans

12      As is evident by these decisions, the Board has repeatedly relied

13  upon the circumstances of the commitment offense and conduct prior to

14  imprisonment to find Petitioner unsuitable. Their continued reference to

15  "Need for Self-Help/Therapy" is contradictory to the EXPERT WITNESS

16  TESTIMONY submitted in the Psychological Reports prepared expressly for

17  the Board. The opposition by the DA is NOT a reason upon which parole denial

18  can be based unless it shows "some evidence bearing an indicia of

19  reliability" that Petitioner is a current, unreasonable risk of threat

20  to the public safety.

21      The Biggs court held that:

22      The Parole Board's sole supportable reliance on the gravity
        of the offense and conduct prior to imprisonment to justify
23      denial of parole can be initially justified as fulfilling the
        requirements set forth by state law. Over time however, should
24      Biggs continue to demonstrate exemplary behavior and evidence
        of rehabilitation, denying him a parole date simply because
25      of the nature of his offense and prior conduct would raise
        serious questions involving his liberty interest in parole...
26      A continued reliance on the circumstances of his offense...
        runs contrary to the rehabilitative goals espoused by the prison
27      system and could result in a due process violation (Id p. 916).

28      It is important to note that the Biggs court referred to a "sole

                                    7

1  supportable reliance on the... offense" and did not say "sole reliance".
2  This is important because the Board routinely gives additional reasons
3  (completely unsupported by the record and usually contradictory thereof),
4  for parole denial so as to avoid a critical review by the courts.

5  Additionally, most lower courts do not address the several grounds
6  presented (as is the case here), relying only on the "some evidence" as
7  related to the offense and cite to this Court's ruling in In re Dannenberg
8  (2005) 34 Cal.4th 1061, 1071.

9  Would the lower courts give a reasoned opinion on all the
10  grounds/issues presented the arbitrary and capricious nature of the Board's
11  decision-making would be revealed.

12  The Board's finding that Petitioner's offense was "carried out in
13  an especially cruel and callous manner... in a dispassionate... calculated
14  manner... demonstrating exceptionally callous disregard for human suffering"
15  can not possibly be ACCURATE since Penal Code § 190.2 holds that any murder
16  involving elements of torture or that unnecessarily inflicted victim
17  suffering requires a conviction of First Degree Murder with a finding of
18  Special Circumstances and a sentence of Life Without Parole (In re
19  Rosenkrantz 80 Cal.App.4th 409, 419-420).

20  The state bargained away their ability to CONTEND First Degree Murder
21  and Special Circumstance allegations in Petitioner's case as part of the
22  Plea Bargain where they contractually agreed that his punishment would
23  be in accordance with a second degree murder conviction (Penal Code §§
24  1192.1 & 1192.5).

25  While the Board's discretion in parole matters is broad, it does not
26  have the authority to recharacterize Petitioner's offense as one carrying
27  a more severe penalty than that to which was agreed upon by the state (In
28  re Ramirez, supra, (2001) 94 Cal.App.4th 549, fn. 8 at p. 569), and deny

8

1  him his guaranteed Liberty Interest in Parole.

2      Since California's parole statutes create a liberty interest in parole

3  and an expectancy of release, prisoners are entitled to constitutional

4  protection. The Board's denial of parole must be supported by "some

5  evidence" which establishes a prisoner is not rehabilitated and is currently

6  an unreasonable threat to public safety. Evidence which fails this test

7  lacks the requisite "indicia of reliability" and fails to satisfy the due

8  process standards identified in Biggs v. Terhune, supra, at pp. 914-917.

9  In addition, the Board's decision must follow the Ramirez, supra, decision

10 defining mandatory parole decision guidelines specified on pp. 569-570,

11 requiring a panel to consider that:

12      All violent crimes demonstrate the perpetrator's potential
       for posing a grave risk to public safety, yet parole is
13     mandatory for violent felons serving determinate sentences.
       (Penal Code § 3000 subd. (b)(1)). And the legislature has
14     clearly expressed its intent that when murderers - who are
       the majority of inmates serving indeterminate sentences -
15     approach their minimum eligible parole date, the board 'shall
       normally set a parole date.' (Penal Code § 3041 subd. (a)).
16     The Board's authority to make an exception based on the gravity
       of the a life term inmate's current or past offense should
17     not operate so as to swallow the rule that parole is 'normally'
       to be granted. Otherwise, the Board's case by case rulings
18     would destroy the proportionality contemplated by Penal Code
       section 3041, subdivision (a), and also the murder statutes,
19     which provide distinct terms of life without the possibility
       of parole, 25 years to life, and 15 years to life for various
20     kinds and degrees of murder (Penal Code § 190 et seq.)"

21     The federal courts have adopted this reasoning and have defined it

22 further. One Federal District Court has explained the Biggs rationale as

23 follows:

24     Whether the facts of the crime of conviction, or other unchanged
       criteria affect the parole eligibility decision can only be
25     predicated on the "predictive value" of the unchanged
       circumstance. Otherwise, if the unchanged circumstance can
26     be used to deny parole eligibility, sentencing is taken out
       of the hands of the judge and totally reposited in the hands
27     of the BPT. That is, parole eligibility could be indefinitely
       and forever delayed based on the nature of the crime even though
28     the sentence given set forth the possibility of parole - a

sentence given with the facts of the crime fresh in the mind of the judge. While it would not be a constitutional violation to forego parole altogether for certain crimes, what the state cannot constitutionally do is have a sham system where the judge promises the possibility of parole, but because of the nature of the crime, the BPT effectively deletes such from the system. Nor can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionally exist where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners' revulsion towards the crime itself, or some other unchanged circumstance, constitutes the alpha and omega of the decision. Nobody elected the BPT commissioners as sentencing judges. Rather, in some realistic way, the facts of the unchanged circumstance must indicate a present danger to the community if released, and this can only be assessed not in a vacuum, after four or five eligibility hearings, but counterpoised against the backdrop of prison events. (Bair v. Folsom Prison 2005 WL 2219220, *12 n. 3 (E.D.Cal. 2005), report and recommendation adopted by 2005 WL 3081634 (E.D.Cal. 2005))

On June 26, 2006, the Los Angeles Superior Court issued a ruling (Case No. BH003529, In re Robert Rosenkrantz), which was upheld by the SECOND APPELLATE DISTRICT and the CALIFORNIA SUPREME COURT holding:

The court finds that petitioner's continual parole denials have been based mainly on the gravity of the commitment offense, the circumstances of which can never change. Therefore, the Board's continued sole reliance on the commitment offense will essentially convert petitioner's original sentence of life with possibility of parole into a sentence of life without the possibility of parole. Petitioner has no chance of obtaining parole unless the Board holds that his crime was not serious enough to warrant a denial of parole. (citing Irons v. Warden (E.D.Cal. 2005) 358 F.Supp.2d 936, 947.)

The Rosenkrantz court further ruled that:

Petitioner has now served in excess of the maximum sentence for both second degree and first degree murder [When good-time credits were applied]. Therefore, the commitment offense should no longer function as a factor for unsuitability and in that case, it should no longer operate as "some evidence" to support the Board's parole denial. Petitioner has reached the point in which the denial of parole can no longer be justified by reliance on his commitment offense. The Board's continued reliance on the circumstances of the offense runs contrary to the rehabilitative goal's espoused by the prison system and has violated petitioner's due process.

10

1    Simultaneously, the Western Division of the United States Central

2    District Court, in Rosenkrantz v. Marshall 444 F.Supp.2d 1063 (C.D.Cal.

3    2006) ruled EXACTLY the same while citing to NUMEROUS other District and

4    Appellate Court decisions with equivalent holdings.

5         Paralleling Petitioner's case this Rosenkrantz court found:

6         ...every psychological examination performed on petitioner
         has confirmed, petitioner's crime was the result of significant
7         stress in his life, a factor that actually weighs in favor
         of parole suitability. 15 Cal. Code Regs. § 2402(d)(4). See
8         Scott, 133 Cal.App.4th at 595-596, 34 Cal.Rptr.3d 905 (finding
         that the Governor erred by failing to consider in petitioner's
9         favor the undisputed evidence that the inmate committed his
         offense under emotional stress).

10
         Second, in this case, the circumstances of petitioner's crime
11        do not amount to some evidence supporting the conclusion that
         petitioner poses an unreasonable risk of danger if released.
12        As discussed, "[I]n the parole context, the requirements of
         due process are met if some evidence supports the decision."
13        Significantly, the evidence underlying the decision must be
         supported by "some indicia of reliability." Biggs, supra, 334
14        F.3d at 914 (internal quotations omitted); Caswell, 363 F.3d
         at 839; see Hill, 472 U.S. at 455-456. Otherwise it does not
15        constitute "some evidence". See Gerald L. Neuman, The
         Constitutional Requirement of "Some Evidence"", 25 San Diego
16        L.Rev. 631, 663-664 (1988) (noting that "[e]vidence that the
         respondent was alive at the time in question is usually relevant
17        to any charge against her. The [due process] protection of
         the "some evidence" requirement demands more than that - less
18        that legal 'sufficiency' of evidence, but more than a trivial
         charade.").

19

20        The Board is required to determine whether Petitioner presents a

21   CURRENT UNREASONABLE risk of threat to public safety if released (PC §

22   3041(b); 15 CCR § 2402), based upon reliable evidence. In this case the

23   Board claimed that Petitioner posed an unreasonable risk of danger, and

24   was therefore unsuitable for parole, "because of the following

25   circumstances" and then recited the facts of Petitioner's commitment

26   offense.

27        The Rosenkrantz court found this type of reasoning insufficient

28   stating:

While relying upon petitioner's crime as an indicator of his dangerousness may be reasonable for some period of time, in this case, continued reliance on such unchanging circumstances – after nearly two decades of incarceration and half a dozen parole suitability hearings – violates due process because petitioner's commitment offense has become such an unreliable predictor of his present and future dangerousness that it does not satisfy the "some evidence" standard. After nearly twenty years of rehabilitation, the ability to predict a prisoner's future dangerousness based simply on the circumstances of his or her crime is nil. See Johnson v. Finn, 2006 WL 195159 *8 n. 3 (E.D.Cal. 2006) (stating that "the seriousness of the crime had predictive value for the dangerousness of petitioner's release for the first, second, perhaps their suitability hearing. But as the years go by, this factor loses its predictive value in light of the growing experience to the contrary (assuming petitioner's record in prison is exemplary).") Irons, 358 F.Supp.2d at 947 n. 2 ("To a point, it is true, the circumstances of the crime and the motivation for it may indicate a petitioner's unsuitability, cruelty, impulsiveness, violent tendencies and the like. However, after fifteen or so years in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstrations that despite the recognized hardships of prison, this petitioner does not possess those attributes, the predictive ability of the circumstances of the crime is near zero.") Even the California courts have said as much in Shaputis, 135 Cal.App.4th at 231-232, 37 Cal.Rptr.3d 324 ("The only evidence before the BPT was that [the inmate] had more than a decade of demonstrated commitment to remaining sober, and there was not a scintilla of violence in his nearly two decades of incarceration. Accordingly, the BPT's conclusion the inmate remained a danger to society, to the extent it was premised on a former lifestyle that all of the evidence showed was a historical relic, is so lacking in any medical, psychological or behavioral evidentiary support that it is arbitrary and capricious within the deferential standards..."); Scott, 133 Cal.App.4th at 595, 34 Cal.Rptr.3d 905 ("The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time.") (Id at 15-16)

Because there is no reliable evidence supporting the BPH's conclusion that Petitioner is unsuitable for parole, that determination violates due process. See Hill, supra, 472 U.S. at 455. The Superior Court's determination to the contrary was based upon an unreasonable determination of the facts in light of the evidence presented during the parole hearing

12

1    and amounted to an unreasonable application of clearly established Supreme

2    Court precedent. See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir.),

3    cert. denied, 543 U.S. 1038, 125 S.Ct. 809, 160 L.Ed.2d 605 (2004).

4    Accordingly, Petitioner is entitled to relief. See McQuillion, 306 F.3d

5    at 912 (finding that petitioner was entitled to relief where none of the

6    four grounds for recision of petitioner's parole release date was supported

7    by "some evidence" and therefore the decision violated due process); Irons,

8    supra, 358 F.Supp.2d at 947-951 (granting habeas relief where the BPT

9    improperly relied upon the unchanging circumstances of the commitment

10   offense in finding petitioner unsuitable for parole in his fifth suitability

11   hearing, and also asserted that petitioner needed more therapy, a conclusion

12   that lacked any support in the record.); Saif' Ullah, 2005 WL 1555389 at

13   *13-16 (granting habeas relief where the record contained no evidence

14   supporting the BPT's decision that petitioner was a danger to society and

15   unsuitable for parole based upon (a) his commitment offense, (b) his prior

16   criminal history, and (c) a rules violation which resulted when, based

17   upon his religious beliefs, petitioner refused to cut his hair).

18        The Court's ruling that "some evidence" existed to support the board's

19   finding of unsuitability, and a two year denial, is disingenuous at best.

20        The Board ordered Petitioner to conduct a self-study on rage implying

21   that he was an unreasonable risk to public safety because they were

22   concerned about "the next stressful situation that could occur", when (1)

23   there is not a scintilla of evidence indicating a need for "rage therapy"

24   in the record, and (2) this determination is completely contradictory of

25   Petitioner's Psychological Evaluations.

26        Additionally, no such study is available to Petitioner in prison,

27   a fact which the Board pointed out, and yet ordered it anyway.

28        Even IF Petitioner was in need of such therapy (which the record

clearly indicates he is not), this fact would be covered in the "Special Conditions of Parole" under CCR § 2404(b) and therefore would NOT be a reason for denying parole.

ARGUMENT II

THE SUPERIOR COURT OF ORANGE COUNTY AND THE FOURTH DISTRICT APPELLATE COURT VIOLATED PETITIONER'S FIRST AMENDMENT RIGHT UNDER THE U.S. CONSTITUTION TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES AS APPLICABLE THROUGH THE "DUE PROCESS CLAUSE" OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION BECAUSE THE COURT DISREGARDED GROUNDS WHICH INTERFERED WITH HIS RIGHT TO BE HEARD UNDER PROCEDURE DUE PROCESS IDENTIFIED IN FUENTES v. SHEVIN (1972) 407 U.S. 67, 32 L.Ed.2d 556, 92 S.Ct. 1983; THEREFORE BEING A MISCARRIAGE OF JUSTICE.

In California, Petitioner has the right to Habeas Corpus relief. Specifically, Penal Code § 1473(a) provides that "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint.

In Petitioner's case he caused an inquiry to be submitted to the Orange County Superior Court and the Fourth District Appellate Courts, via petition for writ of habeas corpus on eight (8) grounds, of which the Superior Court only responded to two (2) of the filed grounds and the Appellate Court issued a silent denial.

Here, the courts effectively chilled Petitioner's First Amendment Right "to petition the government for redress of grievances," by refusing to review and opine on all the grounds of constitutional magnitude as briefed. Bradley v. Hall (9th Cir. 1995) 64 F.3d 1276 has identified this right by unequivocally declaring: "The 'Government' to which the First Amendment guarantees a right of redress of grievances includes the prison authorities, as it includes other administrative terms and units of Government." Clearly, the Judicial Branch is one of these units of Government.

14

1    Simultaneous to Petitioner's right to petition for redress of

2  grievances (U.S. Constitutional Amendment I), he is to be afforded the

3  harmonized entitlement of being heard on his claims.

4    Fuentes v. Shevin, (1972) 407 U.S. 67, 32 L.Ed.2d 556, 92 S.Ct. 1983

5  has held:

6        For more than a century the central meaning of procedural due
         process has been clear: "Parties whose right are to be affected
7        are entitled to be heard, and in order that they may enjoy
         that right they must first be notified." [Citation omitted]
8        It is equally fundamental that the right to notice and an
         opportunity to be heard "must be granted at a meaningful time
9        and in a meaningful manner [Cite omitted].

10    As Petitioner was petitioning the courts about wrongfully being denied

11  parole, and attacking specific reasons of the BPH's findings, he suffered

12  a denial of his Liberty Interest in parole release.

13    Being denied parole constitutes actual injury. Armstrong v. Davis,

14  (9th Cir. 2001) 275 F.3d 849, 864 declared:

15        Furthermore, as a consequence of the Board's unlawful
          discrimination, plaintiffs were unable to comprehend various
16        parts of the parole and parole revocation process or were denied
          the opportunity to attend the required hearings, and may even
17        have been wrongfully incarcerated or denied parole. This too
          constitutes actual injury. (Emphasis added)
18

19    Strengthening the Armstrong v. Davis finding, McQuillion v. Duncan,

20  supra, (9th Cir. 2002) 306 F.3d 895 held, as premised on U.S. Supreme Court

21  principles:

22        We therefore hold that "clearly established Federal law, as
          determined by the Supreme Court of the United States" provides
23        that California prisoners like McQuillion have a cognizable
          liberty interest in release on parole.
24

25    Black's Law Dictionary, 6th Edition has identified under the definition

26  of Procedural Due Process:

27        [Procedural Due Process:] The guarantee of procedural fairness
          which flows from both the Fifth and Fourteenth due process
28        clauses of the Constitution. For the guarantees of procedural

                                    15

due process to apply, it must first be shown that a deprivation of a significant life, liberty, or property interest has occurred. This is necessary to bring the Due Process Clause into play.

Therefore, based on the facts and authorities, Petitioner has clearly first established that a deprivation of a significant liberty interest has occurred. However, the question remains: What response should the Superior Court and Appellate Court have concluded in answering all of the grounds in the petition?

Here, Petitioner does not know because both said courts disregarded the claims. Petitioner contends that he had a 'right of action' based on his 'causes of action' that clearly identified other 'justiciable controversy' not adjudicated by the court's decision. the court's refusal to address all of Petitioner's grounds has caused a miscarriage of justice.

In arguendo, the 'miscarriage of justice' is stated in a prima facie manner. The Superior Court when ruling on the certain grounds decided, ruled against Petitioner. Minimally, the court should have ruled on all the grounds related to the BPH's findings of unsuitability, thus giving Petitioner notice of the "some evidence" review in a meaningful manner. (Superintendent v. Hill, supra, (1985) 472 U.S. 445 - passim).

Under California Constitution Article VI Section 10, as the Superior and Appellate Courts seemed to pass on issues before them without any rationale the California Supreme Court can assume "original jurisdiction" over the passed on claims, as well as review the other alleged wrongs.

Notwithstanding the Superior Court's conclusions of fact/law, this Court can review, via a De Novo Hearing, in which to give Petitioner the ability to present his grounds, being mindful that even minimal interruptions of First Amendment Freedoms "unquestionably constitutes irreparable injury" (Elrod v. Burns, (1976) 472 U.S. 347, 96 S.Ct. 2673).

16

1    Furthermore, <u>Williams v. Taylor</u>, (2000) 120 S.Ct. 1495, 529 U.S. 362,

2  does not permit California to unreasonably refuse to extend <u>Fuentes v.</u>

3  <u>Shevin</u>, supra, to this case, where it should apply (i.e., being heard).

4    The Due Process Clauses of U.S. Constitutional Amendments V and XIV

5  are thus violated.

6  //

7  //

8                                CONCLUSION

9    Petitioner has presented what he humbly believes to be a prima facie

10  case against the Board's denial of parole based on Due Process violations

11  as there is not "some evidence bearing an indicia of reliability" in the

12  record to support the board's findings and in fact the board's findings

13  are in contradiction of the record.

14  (1)  The board relied upon the unchanging circumstances of his crime and

15       prior conduct to deny him parole for the Fifth time after some 20

16       years of rehabilitation and programming indicating he is NO threat

17       to the public safety.

18  (2)  The  board  ignored  the  supportive  psychological  assessments  and

19       substituted  their  own  unqualified  opinions  ordering  Petitioner  to

20       participate in "rage management" therapy even though they acknowledged

21       that it is not available, AND used this non-existent need as a reason

22       to issue a two (2) year denial whereas petitioner had been getting

23       one year denials.

24  (3)  The board exceeded its authority in requiring Petitioner to have parole

25       plans in excess of what the regulations require even when he presented

26       "excellent" primary parole plans as well as optional plans.

27  (4)  The board used a non-violent minor rules infraction to claim his

28       institutional behavior was a reason to deny parole even though his

1   lack of a serious or violent disciplinary history actually shows him

2   to be suitable according to the regulations.

3   (5) The board's reliance on the opposition from the District Attorney's

4   office is an abuse of their discretion. This is not part of the

5   criteria for determining suitability.

6   Notably, there was no mention in the board's findings that the Victim's

7   family SUPPORTS a finding of suitability as they have for several

8   years.

9   Petitioner therefore prays this court will grant him review on all

10  the issues in his Superior Court petition.

11

12  Respectfully submitted this 10th day of December, 2006,

13

14  WILLIAM BRADSHAW  D-73217
    P.O. Box 689       GW-325L
15  SOLEDAD, CA    93960-0689
      Petitioner in pro per

16

17

18

19

20

21

22

23

24

25

26

27

28                                      18

E X H I B I T  'A'

APPELLATE COURT DENIAL

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

In re WILLIAM BRADSHAW

on Habeas Corpus.

G037697

(Super. Ct. No. M10957)

O R D E R

THE COURT:*

The petition for a writ of habeas corpus is DENIED.

**ARONSON, J.**

ARONSON, ACTING P. J.

\* Before Aronson, Acting P. J., Fybel, J., and Ikola, J.

COURT OF APPEAL
FOURTH APPELLATE DISTRICT
DIVISION THREE
925 NORTH SPURGEON STREET
SANTA ANA, CA 92701
MAILING ADDRESS
P.O. BOX 22055
SANTA ANA, CA 92702

Bradshaw

DEC 0 4 2006

DECLARATION OF SERVICE BY MAIL
(by a person in state custody)
(C.C.P. §§ 1013A, 2015.5)

I, WILLIAM BRADSHAW, D-73217 declare: I am a resident of the State
of California, County of Monterey. I am over the age of 18 years and
I am a party to the within action. My residence address is P.O. Box
689, Soledad, California, 93960-0689.

On December $\underline{17}$, 2006 I served the foregoing PETITION FOR REVIEW
on the parties listed below by placing a true copy thereof enclosed
in a sealed envelope with first class postage fully prepaid in the
United States mail at Soledad, California, addressed as follows:

Original + 13 Copies                    One Copy

CALIFORNIA SUPREME COURT                OFFICE OF THE ATTORNEY GENERAL
350 McALLISTER STREET                   P.O. BOX 85266
SAN FRANCISCO, CA      94102            SAN DIEGO, CA      91286-5266

One Copy                                One Copy

FOURTH DISTRICT COURT OF APPEAL         ORANGE COUNTY SUPERIOR COURT
P.O. BOX 22055                          700 CIVIC CENTER DRIVE WEST
SANTA ANA, CA      92702                SANTA ANA, CA      92701

There is regular mail delivery by the U.S. Postal Service between
the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State
of California that the foregoing is true and correct.

Executed this $\underline{17}$ day of December, 2006, at Soledad, California.

WILLIAM BRADSHAW
Petitioner in pro per

PLEASE FILE ACCORDING TO THE "MAILBOX RULE" HOUSTON V. LACK (1987)
108 S.Ct. 2379; KOCK V. RICKETTS (9th Cir. 1995) 68 F.3d 1191, ON THE
DATE INDICATED ABOVE.

# LODGEMENT V

SUPREME COURT (STATE) ORDER DENYING
REVIEW

Court of Appeal, Fourth Appellate District, Div. 3 - No. G037697
**S148910**

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

In re WILLIAM BRADSHAW on Habeas Corpus

The petition for review is DENIED.

SUPREME COURT
**FILED**

MAR 1 4 2007

Frederick K. Ohlrich Clerk

_____
Deputy

GEORGE

_____
Chief Justice

# LODGEMENT VI

PSYCH. REPORT